HERKIMER COUNTY LIGHT & POWER CO. v. JOHNSON et al.

(Supreme Court, Appellate Division, Fourth Department. February 3, 1899.)

1. TAXATION—PROPERTY TAXABLE AS REALTY.

The Tax Law 1896, § 2, subd. 3, defining real estate as including all mains, pipes, and tanks laid or placed upon or under any street or place for conducting electricity or any property or substance capable of transmission therein, is applicable to the machinery used in connection with such mains or wires for generating and sending forth gas or electricity; hence such machinery is assessable as realty in the tax district where situated.

2. SUBMISSION BY AGREEMENT—COSTS.

Where a cause is submitted by agreement under Code Civ. Proc. c. 11, tit. 2, art. 2, and the submission does not provide for costs, the awarding of costs is discretionary with the court.

Follett, J., dissenting.

Action by the Herkimer County Light & Power Company against Thomas H. Johnson and others, as assessors of the city of Little Falls. The controversy was submitted on admitted facts, pursuant to Code Civ. Proc. c. 11, tit. 2, art. 2.

The plaintiff, at the date of the submission, and for some years previous thereto, was a domestic corporation, organized for the purpose of manufac-

turing and supplying gas, electric light, heat, and power, having its principal office for transacting business at the village of Herkimer, in the town of Herkimer, N. Y. The defendants, at the date of the submission, and for more than a year previous thereto, were the assessors of the city of Little Falls, N. Y. In July, 1898, the plaintiff was the owner and occupant of certain property used in its business in manufacturing and distributing gas, and in manufacturing and distributing electricity for lighting and for power in said city. On the 1st day of August, 1898, said assessors completed their assessment roll, on which they valued the property of the plaintiff situate in said city for the purposes of taxation at $50,000, and gave notice of the completion of said roll, and of the hearing of grievances. The property valued for assessment at $50,000 is made up of seven items, all assessed as realty. On grievance day, the plaintiff appeared before the assessors, and filed with them a written statement, duly verified, by which it asserted that certain property assessed on said roll as real estate, and valued for taxation at $26,300, was personal property, and assessable only in the village and town of Herkimer, where the plaintiff's principal office was located, and that the assessment thereof by the assessors of the city of Little Falls was "illegal and erroneous." The facts in respect to the property so asserted to have been assessed illegally are set forth in items 3, 4, and 6 in the agreed submission, as follows:

"Item 3. That contained in the gas house above mentioned are two brick gas benches, one having four and the other three iron retorts. These benches stand upon the brick floor of the gas house. The iron retorts are each connected by means of a six-inch iron pipe, with an eighteen-inch drum. This drum, in turn, is connected by an iron pipe with an iron condenser, and the condenser is in the same way connected with an iron scrubber, and this scrubber is also connected by means of iron pipe with two purifiers made of iron, and the purifiers are likewise connected with the gas holders. The gas is generated in the retorts and passes through the scrubber, condenser, and purifiers into the gas holders, from where it is taken into the gas mains for distribution. There is also contained in this building one vertical two horse power engine, with a ten horse power vertical boiler, both being set upon the gas-house floor, and are not attached to the floor or walls of the building. All of this apparatus, which constitutes the entire gas manufacturing machinery of the plaintiff (except two gas holders and the gas mains and pipes), was placed in said building for the purpose of manufacturing and supplying gas as trade fixtures; and the same can be removed from the building without injuring or destroying the building or any part thereof, and without damage to the freehold. All of this apparatus was included in the above-mentioned assessment against the plaintiff at an assessed valuation of $3,000.

"Item 4. On the 1st day of July, 1898, the plaintiff was in possession, under a lease from year to year, of a small piece of land belonging to Charles King, lying on the south side of East Mill street, in said city, about sixty feet square, upon which was located an iron gas holder, forty feet in diameter, standing in a pit sixteen feet deep. This holder is a trade fixture, and can be removed in sections without injury to the freehold, and was included in said assessment against the plaintiff at an assessed valuation of $2,000. The land upon which the same stands was assessed upon the same roll to the owner, Charles King."

"Item 6. On the 1st day of July, 1898, the plaintiff was in possession under a lease, a copy of which is hereto annexed, marked 'Exhibit A,' and made a part hereof, of lots nine, ten, eleven, and twelve, located on the south side of East Mill street, in said city, upon which was located a permanent stone building, three stories high, in which was contained electrical generating machinery belonging to plaintiff, as follows: Three horizontal tubular boilers, of 100 horse power each, bricked in, but not attached to the floor of the building in any way, except as stated. Each of these boilers are connected by a four-inch iron pipe with a twelve-inch iron main, and from this main leads a twelve-inch iron pipe, conducting the steam from said boilers to two compound engines, with condensers, made by McIntosh, Seymour & Co., of Auburn, N. Y., the rated capacity of which is 150 horse power each. These engines stand upon the floor of the building supported by masonry, to which

the same are bolted, and both of which can be removed from the building and premises by unscrewing the nuts from each bolt, without injuring in any way the building or freehold. The power from these engines is transmitted to a main line shaft by means of friction clutches, which main shaft is one hundred and thirteen feet long, made in five sections, supported by iron floor stands fastened to the floor with iron bolts, and all removable in the same way as the engines. Connected with this shaft by means of driving belts are two 1,000 sixteen candle light dynamos, one 2,000 sixteen candle light dynamo, one 100 horse power generator, three dynamos, of fifty 2,000 candle power lights each. This machinery was included in said assessment against plaintiff at the following assessed valuations:

| | |
|---|---:|
| 7 dynamos and connections.................................... | $ 9,500 |
| 2 engines and connections.................................... | 5,000 |
| 3 boilers and connections.................................... | 4,000 |
| Shafting and gearing......................................... | 2,300 |
| For other machinery connected with the above.................. | 500 |
| | |
| Total ...................................................... | $21,300 |

"The above-mentioned machinery was placed upon said leased premises soon after the date of the lease hereto annexed, by plaintiff's predecessor, United Gas & Electric Companies, as trade fixtures, and is now used as such, and may be removed therefrom without injury to said building or to the freehold in any manner whatever. That the stone building in which the above mentioned and described machinery is contained, together with the land upon which the same stands, was assessed to Watts T. Loomis and others, as owners, upon the same assessment roll at the sum of $15,000. That all of the above-mentioned articles are connected with the wires, poles, and apparatus mentioned in 'Item 7,' and altogether form and constitute plaintiff's electric light and power plant in the city of Little Falls."

The lease referred to in the sixth item is dated February 1, 1897, and is to continue until February 1, 1927, at an annual rental of $1,500, and contains the following provisions: "The option [to plaintiff] to purchase the demised premises during the continuance of the lease, upon terms to be agreed upon, and, in case of nonagreement, upon terms to be fixed by arbitration between the parties, is hereby granted. * * * The party of the second part [plaintiff] hereby agrees to pay all taxes and assessments levied upon the demised premises, as an added rental to the rent already reserved." The assessors declined to strike from the assessment roll items 3, 4, and 6, or any part of them; and the question submitted is whether those items, or any part of them, were subject to assessment by the assessors of the city of Little Falls.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and McLENNAN, JJ.

Thomas F. Ward, for plaintiff.
S. H. Newberry, for defendants.

PER CURIAM. Under the charter of the city of Little Falls (chapter 565 of the Laws of 1895), two assessment rolls are made in each year,—one in February, for the city taxes (sections 157 and 158 of the charter, as amended by chapter 13 of the Laws of 1896); and one in August, for state and county taxes. Section 151 of the charter. It is not stated in the submission whether the assessment complained of was for city taxes, or for state and county taxes, but from the date of the assessment it is assumed to have been for state and county taxes. It is assumed by counsel in their briefs that the question submitted is controlled by the tax law (chapter 908 of the Laws of 1896), and that the charter of the city of Little Falls does not affect the question; and upon that assumption this case will be considered.

It is conceded by the litigants in their submission that the property

described in items 1, 2, 5, and 7 of the submitted case was legally assessed to the plaintiff as real estate, and at a fair valuation. It is also conceded by the litigants in their submission that the properties described in items 3, 4, and 6 of the submitted case are "trade fixtures," and can be removed from the buildings wherein used without injury to the buildings or to the real estate whereon they are used. By the third subdivision of section 2 of the tax law the terms "land," "real estate," and "real property" are defined as follows:

"(3) The terms 'land,' 'real estate,' and 'real property,' as used in this chapter, include the land itself above and under water, all buildings and other articles and structures, substructures, superstructures, erected upon, under or above, or affixed to the same;   *   *   *   all supports and inclosures for electrical conductors and other appurtenances upon, above and underground;   *   *   *   all mains, pipes and tanks laid or placed in, upon, above or under any public or private street or place for conducting steam, heat, water, oil, electricity or any property, substance or product capable of transportation or conveyance therein or that is protected thereby.   *   *   *"

By the fourth subdivision of that section the terms "personal estate" and "personal property" are defined as follows:

"(4) The terms 'personal estate' and 'personal property,' as used in this chapter, include, chattels, money, things in action, debts due from solvent debtors whether on account, contract, note, bond or mortgage; debts and obligations for the payment of money due or owing to persons residing within this state, however secured or wherever such securities shall be held; debts due by inhabitants of this state to persons not residing within the United States for the purchase of any real estate; public stocks, stocks in moneyed corporations, and such portion of the capital of incorporated companies, liable to taxation on their capital, as shall not be invested in real estate."

It will be observed that there is no language in the fourth subdivision of section 2, above quoted, which describes the property mentioned in items 3, 4, and 6, except the word "chattels"; and the exact question presented is whether the properties described in those items are "chattels" or "real estate," within the tax law, for, if they are "chattels," they are not assessable in the city of Little Falls, but are assessable in the village and town of Herkimer, under section 11 of article 1 of the tax law, which provides:

"Sec. 11. The real estate of all incorporated companies liable to taxation shall be assessed in the tax district in which the same shall lie, in the same manner as the real estate of individuals. All the personal estate of every incorporated company liable to taxation on its capital shall be assessed in the tax district where the principal office or place for transacting the financial concerns of the company shall be, or if such company have no principal office or place for transacting its financial concerns, then in the tax district where the operations of such company shall be carried on."

"The gas house above mentioned," referred to in the third item, stands on land leased by the owner from year to year, as is stated in the second item of the submission, wherein it appears that the property described in the third item constitutes the gas-generating apparatus belonging to the plaintiff, and is connected, as appears in the fifth item in the submission, with "about eight miles of gas pipes and mains" laid underground, and through the streets of the city of Little Falls, for the distribution of gas to the plaintiff's customers, which mains were assessed in 1898 for the purposes of taxation, as realty,

and valued at $10,000. By the seventh item of the submission it appears that, when the assessment was made, the plaintiff owned 500 poles and 15 miles of line wire for the distribution of electricity to its customers in the city, which lines are connected with the machinery described in the sixth item. It appears by the submission that the property assessed in the 3, 4, and 6 items is on land leased by the owners to the plaintiff. The term "trade fixtures," used in the submission, does not tend to advance the argument of either litigant, nor does it aid the court to decide the question submitted, for the reason that "trade fixtures" is a term usually used to describe property which a tenant has placed on rented realty to advance the business for which the realty was leased, and may, as against the lessor and those claiming under him, be removed at the end of the tenant's term. This concession would be useful in determining the rights between the plaintiff, as lessee, and its landlord. Neither would it aid the court to consider the cases holding what are or are not fixtures as between vendor and vendee, mortgagor and mortgagee, heir or devisee and personal representative, mortgagees and execution creditors, or between the owner of the fee and his judgment creditors, because the tax law has set up a standard of its own which must govern the case.

Before the passage of chapter 293 of the Laws of 1881, the definition of the term "real estate," contained in the Revised Statutes, was deemed applicable to the statutes relating to taxation, but by that act property theretofore assessable as personalty was declared to be assessable as realty. Under that and subsequent acts relating to taxation, the definition of the terms "real estate" and "personal estate," as used in the tax law, must be defined by those laws, and not by the general statutes of the state. We are of the opinion that the language in the third subdivision of section 2 of the tax law above quoted, that "all mains, pipes and tanks laid or placed in, upon, above or under any public or private street or place for conducting   *   *   * electricity or any property, substance or product capable of transmission or conveyance therein or that is protected thereby," must be deemed applicable to machinery used in connection with the mains or wires for generating and sending forth electricity on the lines, or gas through the mains. The property described in the contested items 3, 4, and 6 is designated for use in connection with these lines and mains which are clearly designated as "real estate" by the tax law, and the property described in those items is assessable as realty in the tax district where it is situated.

A judgment should be directed in favor of the defendants, holding that the property described in the third, fourth, and sixth items of the submission was rightfully assessed in 1898 to the plaintiff by the assessors of the city of Little Falls. If it should subsequently appear that the town or village of Herkimer has any interest in the question submitted, such interest must be regarded as open and undetermined, and the judgment entered must contain a provision to that effect. Gray v. Daniels, 18 App. Div. 466, 45 N. Y. Supp. 1106. The submission does not provide for costs, and in such a case the awarding of costs is discretionary with the court. Code Civ. Proc. § 1281; Gray v.

Daniels, 18 App. Div. 465, 45 N. Y. Supp. 1106.    Under the circumstances, we think costs should not be awarded to either party.

Judgment directed for the defendants, without costs.    All concur, except FOLLETT, J., dissenting in a memorandum, and WARD, J., not voting.

FOLLETT, J. (dissenting).    Further consideration of this case leads me to the conclusion that it ought not to be decided on the submission, because all of the parties interested in the subject-matter are not before the court.    It is apparent that the town and village of Herkimer, in which the principal place of business of the Herkimer County Light & Power Company is located, has the same interest in respect to the tax district in which the property of the corporation is assessable as has the city of Little Falls; and a judgment should never be rendered on a submission when it is apparent that persons or corporations are interested in the subject-matter that are not parties to the submission.    Baumgrass v. Brickell, 7 N. Y. St. Rep. 685;  Wavle v. Tuttle, 11 N. Y. Wkly. Dig. 186;  Hobart College v. Fitzhugh, 27 N. Y. 130;  Wood v. Squires, 60 N. Y. 191;  Dickinson v. Dickey, 76 N. Y. 602;  Kennedy v. Mayor, etc., 79 N. Y. 361.    The question is an important one as between the city of Little Falls and the town and village of Herkimer;  and, while the judgment rendered on this submission will not be binding upon the latter, yet the question ought not to be decided until the rights of all the parties interested can be presented.    A judgment recovered in an amicable action, or on a submission, though it be in the nature of a proceeding in rem, is not binding on persons not in privity with the litigants, and who have had no opportunity of being heard.    Calhoun v. Millard, 121 N. Y. 69, 24 N. E. 27;  Lord v. Veazie, 8 How. 251;  2 Freem. Judgm. (4th Ed.) c. 13.

This judgment may result in the Herkimer County Light & Power Company being subjected to double taxation for the year 1898.    It is not stated in the submission whether the assessment complained of is for city taxes or for state and county taxes, and the court cannot infer that it relates to state and county taxes or to city taxes.    In cases submitted pursuant to article 2 of title 2 of chapter 11 of the Code of Civil Procedure, the court cannot draw inferences, and can pass only on facts plainly stated in the submission.    Fearing v. Irwin, 55 N. Y. 486;  Crosby v. Thedford, 13 Daly, 150;  Department of Buildings v. Field, 9 App. Div. 500, 41 N. Y. Supp. 1112;  Beer v. Simpson (Sup.) 19 N. Y. Supp. 578.    The parties to this submission should be required to serve a copy of it on the supervisor of the town of Herkimer, and on the president of the village of Herkimer, so that they may have an opportunity to be heard.

The decision should be postponed, or the submission dismissed, without costs to either party.