PEOPLE ex rel. FEDERAL TELEPHONE & TELEGRAPH CO. v. LONG
WELL et al., Village Assessors.

(Supreme Court, Special Term, Steuben County.   August 9, 1911.)

1. TAXATION (§ 276*)—TELEPHONE SWITCHBOARD—"REAL PROPERTY."
    Tax Law (Consol. Laws, 1909, c. 60) § 2, subd. 3, defines land and real
    estate to include all bridges or telegraph lines, wires, poles, and appur-
    tenances, and also all mains, pipes, and tanks laid or placed in any place
    for conducting electricity or any substance or product capable of trans-
    mission or conveyance therein.  Held that, where a telephone company
    maintained a switchboard and appliances essential for its business in a
    building in a village on which it had a lease for 10 years, the switch-
    board, for the purposes of taxation, was properly regarded as "real prop-
    erty" and taxable in the village, though the company's main office was
    in another city.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 466–468; Dec.
    Dig. § 276.*
    For other definitions, see Words and Phrases, vol. 7, pp. 5939–5951;
    vol. 8, pp. 7778, 7779.]

Certiorari by the People, on relation of the Federal Telephone &
Telegraph Company, against William V. Longwell and others, as As-
sessors of the Village of Bath, to review the action of the Assessors,
and to have certain items of the assessment made against relator
stricken from the tax rolls.  Assessment confirmed, and writ quashed.

Kenefick, Cooke, Mitchell & Bass, for plaintiff.
James McCall, for defendants.

CLARK, J.  The controversy here is confined to the question as to
whether plaintiff's switchboard and appurtenances, located in the
Shannon Block, in the village of Bath, should be assessed as real es-
tate or personal property.  It is not claimed by the relator that the as-
sessment is unequal, or in a higher proportionate valuation than other
real and personal property appearing on the tax roll of 1911, in the
village of Bath; but relator insists that the switchboard, which was
assessed as real estate, should be assessed as personal property, and in
the city of Buffalo, where its home office is located, and, if the switch-
board is personal property, it was erroneous to assess it in Bath, and
it should be assessed at the place where the relator's home office is
located.  Tax Law (Consol. Laws 1909, c. 60) § 11.

It was stipulated on the hearing that the switchboard of the relator
consists of three separate sections, constructed of a metal frame and
oak cabinet work, and that they are fastened together to form a com-
plete switchboard.  They are fastened with screws, and can be de-
tached from the building and from each other.  This switchboard is
14 feet long, 4 feet deep, and 6 feet high, and at the time the assess-
ment was levied was situated in the Shannon Block, in the village of
Bath, where the relator occupies four rooms under a 10-year lease,
which is still in effect.  The construction of the switchboard is such
that all wires and cables are connected wholly within the switchboard,
and the wires from the board to the power apparatus and terminal

heads are supported in ducts and carried under the floor of the rooms, and are not fastened to the building, and these terminals can be removed by unsoldering the wires connected with the relator's lines, if the exchange was abandoned or removed; but these frames are bolted to the floor of the building by iron bolts, and attached thereto are iron braces fastened to the floor with screws. The wires from relator's mains come from the street, underground, under the floors, and within the walls of the Shannon Block into one of the rooms in said building occupied by said relator as a tenant. Wires lead from the main switchboard to a marble switchboard, bolted to the wall of the room, and on this marble switchboard are large switches and meters for measuring electric currents and power passing through the large switchboard. All the wires in use on and under the streets of the village of Bath by the relator, and connecting with its apparatus and switchboard in the Shannon Block, are soldered at their connections, so as to make a perfect union for the passage of electric current used in carrying on relator's telephone business; the large switchboard furnishing the means for connecting the wires leading to upwards of 400 subscribers located in the village of Bath and vicinity.

The relator alleges that the assessors were in error in assessing its switchboard and appliances in the Shannon Block as real estate, and relies on the case of People ex rel. New York Edison Company v. Feitner, 99 App. Div. 274, 90 N. Y. Supp. 904, to sustain its contention. I hardly think that case is a controlling authority here, for the reason that the facts do not correspond with the facts in the case at bar. In the case of People v. Feitner, supra, the relator, and electric light company, introduced its service to customers within the building line, and its terminals consisted of a switch inside the house line, and from that switch there ran out cables connected with the mains in the street; the conduit connecting the mains with the switch on private property going through the wall of the building. But the electric light company had no right whatever to use the private property of the customer, except to make the bare connection necessary to carry to his building the current of electricity, and that connection was maintained at the option of the owner or occupant of the building as long as he used the company's electricity. The relator had acquired no right to use the subscriber's real property, and had no interest in the property, and at any moment the connection could be cut off by the owner or by the relator, and the assessment on the switch and cables in that case, located on private property, which had been set down as real estate, was stricken off for the single and sufficient reason that the relator, under his contract, merely supplied the owner or occupant of the building with electricity, but acquired no right in or to the real estate, or any part of it.

The case at bar is quite different. It is undisputed that the switchboard in question is a very vital part of relator's plant in the village of Bath. Without the switchboard it would be impossible for it to transact its business with its large number of subscribers. The relator has, in this case, a very substantial interest in the rooms it occupies in the Shannon Block, for it occupies them under a 10-year lease,

still in existence. These rooms are used exclusively for its telephone business, and in these rooms thus held are located the switchboard, wires, and appurtenances connecting with its main lines, and without which it could not transact business with its 400 subscribers. The switchboard and its appurtenances being absolutely essential to the business of the relator, and they being located in the rooms in the Shannon Building used exclusively for this purpose under a long lease, it impresses me that the relator has acquired such an interest in the real property that it was proper to assess the switchboard and appurtenances as real estate.

If relator had simply strung its wires to the Shannon Block for the purpose of installing a telephone instrument for a customer located there, without acquiring any rights in the building, its instrument and wires to remain there only while its customer accepted its service, relator's contention here would be fully supported by the case of People v. Feitner, supra; but where, as in this case, it occupies a suite of rooms in this building under a long lease, the rooms being used exclusively for its business, where it has located in them a very vital part of its equipment, the switchboard, through which it does business with its subscribers, even though the board could be removed without material injury to the building, I think, for the purposes of taxation, while relator has its switchboard and appurtenances in these rooms used exclusively for its business, the switchboard and appliances are properly taxed as real estate. Tax Law, art. 1, § 2, subd. 3; Herkimer County Light & Power Co. v. Johnson, 37 App. Div. 257, 55 N. Y. Supp. 924; Detroit United Ry. v. Tax Com., 136 Mich. 96, 98 N. W. 997.

In the Feitner Case, supra, relator had no interest whatever in the real estate; but the relator here has an interest in these rooms under a 10-year lease, where its switchboard and appliances are located, and where the rooms are fitted up and used exclusively for its business, and it has such an interest in the real estate as will protect its switchboard erected there, and that is sufficient, so that these articles for taxation purposes can be considered real estate, even though relator does not own the fee of the property in which its appliances are located. People ex rel. Dunkirk, etc., v. Cassity, 46 N. Y. 46.

Section 2, subd. 3, art. 1 of the tax law, in describing the terms "land" and "real estate," says: "All bridges or telegraph lines, wires, poles and appurtenances are real estate," as are also "all mains, pipes and tanks, laid or placed in, upon, above or under any public or private street or place for conducting steam, heat, water, oil, electricity, or any property, substance or product capable of transportation or conveyance therein, or that is protected thereby," and the section is sufficiently broad to include the switchboard in question, which is used in connection with relator's lines located in the streets of Bath, and through which switchboard and its property located in the Shannon Block it is enabled to transact its business with its subscribers, and it should be assessed as real etate; it being a part of the tangible property of relator in the village of Bath.

The tendency of legislation in this state for many years has been to

enlarge the powers of local authorities with reference to taxing property in their several localities, to the end that owners of property enjoying the protection of local government should assist in bearing the burdens of maintaining it, and while it is true that tax laws must be strictly construed, I think in this case, where the switchboard in question is a necessary and vital part of relator's telephone system in Bath, through which its entire business with its subscribers is transacted, when it is located on premises held under a long lease, and used exclusively for its business, the switchboard and its appliances should be assessed as real property, even though relator does not own the building in which this vital part of its telephone system is located.

If I am correct in these conclusions, it follows that the assessment in question must be confirmed, and the writ of certiorari quashed, with costs to the defendants.

Ordered accordingly.