Dye, J.
The Grumman Aircraft Engineering Corporation, hereinafter called Grumman, instituted this special proceeding under article 13 of the Tax Law against the Assessors of the Town of Riverhead, Suffolk County, New York, hereinafter called Assessors, for an order striking from its assessment rolls an assessment made against Grumman’s alleged interest in real property lying in said town and leased by it from the United States, hereinafter called Government, on the ground that such leasehold interest is not subject to assessment and tax within the provisions of the State Tax Law. Grumman now appeals as of right from an order of the Appellate Division, Second Department, which reversed an order of the Supreme Court, Suffolk County, denying respondents’ motion to dismiss Grumman’s petition for insufficiency, and dismissed the petition.
Under date of January 23, 1952, Grumman made a contract with the Government known as Facilities Contract NOa-1151, which, in brief, dealt with the acquisition of machine equipment and tools and the design, layout and construction of what is now *504 known as the Naval Industrial Reserve Aircraft Plant at Calverton, Suffolk County, New York. This was under the direction of the Secretary of the Navy. The construction work cost the Government about $23,500,000. In addition, Grumman contributed engineering, design and supervisory work amounting to $2,356,112 or a total cost of $25,856,112 for the completed facility.
Upon completion of the work, the Government leased the whole facility to Grumman by written lease dated April 1, 1954 for a term of five years ending March 31, 1959, with the right of renewal on the same terms at the option of the tenant for two successive five-year periods, the rental, however, for the latter periods being subject to renegotiation prior to the commencement of such renewal or extended term. Various other terms and conditions are dealt with which need not be mentioned except to call attention to the lease provision dealing with termination before the end of the term when and if the Secretary determines the facilities or a major portion thereof are excess to the further needs of the Navy Department (art. VII, par. [d])[1] and, if so terminated, the tenant’s option to purchase (art. X, par. [a])[2].
*505 The assessments complained of were levied pnrsnant to provisions of subdivision 17 of section 4 of the Tax Law[3] and in reliance on a waiver of immunity as contained in Federal Statute (U. S. Code, tit. 34, §§ 522a, 522c, 522e)[4] as follows:
*506 1955-1956 ............................... $743,100 For amount omitted from 1954 tax roll..... 496,000
Total .................................. $1,239,100[5]
The petitioner-appellant challenges the validity of such assessments (1) for lack of statutory authority; (2) if deemed authorized by subdivision 17 of section 4 of the Tax Law, then such statute is constitutionally invalid as violative of the immunity of the Federal Government from taxation by the States (United States v. County of Allegheny, 322 U .S. 174); and (3) that, in any event, the petition should not have been dismissed but, instead, remanded to the Supreme Court, Suffolk County, for further proceedings.
The Special Term sustained the petitioner’s objections and granted an order directing the Assessors to remove the assessment from its tax rolls. This ruling was on the theory that Grumman’s interest in the facilities, at best, was personalty, and — -as such —not liable to assessment and tax as real property (Tax Law, § 3). Upon appeal, the Appellate Division took a contrary view, reversed the order and dismissed the petition on the ground that Grumman’s interest was taxable within the meaning of subdivision 17 of section 4 of the Tax Law.
Initially let it be said that Grumman does not assert that it is exempt from taxation. Its assertion is that it has no interest in the subject premises, otherwise immune from taxation, which can be said to fall within the purview of any tax statute.
*507 In New York, all real property within the State is taxable unless specially exempt by law (Tax Law, § 3). Property of the United States is exempt unless made subject to taxation under the Constitution and laws of the United States (Tax Law, § 4, subd. 1). On the other hand, personal property — whether tangible or intangible — is not liable to taxation locally for State or local purposes (Tax Law, § 3). Although it is fundamental that the Legislature may classify property for tax purposes in any manner it deems proper (People ex rel. Hudson Riv. Day Line v. Franck, 257 N. Y. 69), its power in that regard is not without limitation, for the classification must have some reasonable basis (People ex rel. Farrington v. Mensching, 187 N. Y. 8). It is significant to note that nowhere in the Tax Law has the Legislature characterized a leasehold as taxable real property. Such omission is understandable, as a lease for years is deemed personalty (Matter of Althause, 63 App. Div. 252, affd. without opinion 168 N. Y. 670; Fifth Ave. Bldg. Co. v. Kernochan, 221 N. Y. 370; First Trust & Deposit Co. v. Syrdelco, Inc., 249 App. Div. 285; Matter of Ehrsam v. City of Utica, 37 App. Div. 272; Restatement, Property, § 8; 1949 Atty. Gen. 90, 91). We do not read subdivision 17 of section 4 of the Tax Law as changing this basic concept.
Subdivision 17 of section 4 of the Tax Law was enacted following our decision in People ex rel. Donner-Union Coke Corp. v. Burke (204 App. Div. 557, affd. without opinion 236 N. Y. 650). In that case, the Donner Company was in possession of the plant which it had purchased from the United States Government under an executory contract of sale, the Government retaining the legal title as security analogous to a mortgage. We struck down an assessment against Donner on the theory that to apply the principle that a vendee in possession of real property under an executory contract of sale is to be regarded as the owner for purposes of taxation, might cause embarrassment to the title of the United States in the event of a tax sale. It was the illegality of such assessment which the Legislature sought to cure by enacting subdivision 17 of section 4 (see People ex rel. Donner-Hanna Coke Corp. v. Burke, 248 N. Y. 507).
*508 Grumman is not in the same position as Donner. It is not in possession under an executory contract of purchase as was Donner, but is in possession under a long-term lease which casts the parties in the relationship of landlord and tenant. Under the lease, the Government retains legal title, not as an equitable mortgagee, but as an owner in fee — together with all rights of ownership — including the right to terminate the lease at will. Nothing in the lease is tantamount to an equitable ownership such as is contemplated by the statute. According to the lease, Grumman has no more than an option “ to purchase the Facilities at their original cost to the Government less depreciation ” (art. X,. subd. [a] — for full text, see Note 2 above, p. 504) which, however, may not be exercised until after 90 days ’ written notice to the lessee that ‘ ‘ the Secretary has determined that the Facilities, or the major portion thereof, are excess to the further needs and responsibilities of the Department; provided, however, that if, within such ninety (90) day period, the Lessee shall notify the Department of its intention to exercise the right to purchase the Facilities as provided in Article X hereof, termination of this lease * * * shall not become effective unless and until the Department shall have obtained all necessary authorizations and approvals required to effectuate such sale * * * and shall have notified Lessee that it has obtained such necessary authorizations and approvals ” (art. VII; for full text see Note 1 above, p. 504).
When this so-called option is read in its most favorable light, it confers upon the lessee nothing more than a right of first refusal to purchase the facilities at a price to be fixed at the time and conditioned upon a variety of circumstances that only affirmative action of the secretary can bring to pass — and even then — it is subject at all times to the secretary’s having obtained “ all necessary authorizations or approvals ”. Until these prerequisite conditions are met, the lessee is in no position to exercise its right of first refusal. Grumman’s connection with the property will come to an end at the termination of the lease. Since Grumman is under no obligation to purchase the property and in no position to bring about an opportunity in which to exercise its right of first refusal, it cannot be said, as matter of fact or as matter of law, that Grumman is a vendee in possession under an executory contract of purchase. So viewed, Grumman has no interest in the facilities subject to assessment *509 and taxation within the meaning of subdivision 17 of section 4. It is only when the Government holds a bare legal title analogous to a mortgage that the immunity of the United States no longer attaches (Tax Law, § 4,- subd. 1). When such is the case, the assessment for taxation ‘ ‘ shall be at the full value of such property without deduction ”, the same as if the legal title were held by the vendee (Tax Law, § 4, subd. 17). Nothing in subdivision 17 of section 4 conflicts with Federal law. As we read section 522e of title 34 of the United States Code (Note 4 above, p. 505), the United States has consented to a waiver of its immunity from taxation to the extent of permitting local taxation of a lessee’s interest in Government property. The Federal statute is, however, permissive only and no tax is possible unless local law authorizes and provides for it. Since subdivision 17 of section 4 authorizes the assessment of the interest of the party in possession “ in the same manner as if ” it “ held the legal title ” to the property owned by the United States and that it be assessed “at the full value of such property”, the question arises whether this section is void because it disregards and exceeds the limited nature of the United States Government’s waiver which extends only to the “lessee’s interest”. The answer to that question is to be found in United States v. County of Allegheny, (322 U. S. 174, 187-189, supra), wherein the court said:
“ We have held that where private interests in property were so preponderant that all the Government held was a naked title and a nominal interest, the whole value was taxable to the equitable owner. Northern Pacific Ry. Co. v. Myers, 172 U. S. 589; New Brunswick v. United States, 276 U. S. 547. But that is not the situation here, and the State has made no effort to segregate Mesta’s interest and tax it. The full value of the property, including the whole ownership interest, as well as whatever value proper appraisal might attribute to the leasehold, was included in Mesta’s assessment. * * *
“We hold that Government-owned property, to the full extent of the Government’s interest therein, is immune from taxation, either as against the Government itself or as against one who holds it as a bailee. ’ ’
In the case before us, the respondents attempt to circumvent subdivision 1 of section 4 of the Tax Law which prevents the taxing of property of the United States, by categorizing the *510 assessment as being on ‘ ‘ interest under contract with U. S. of 4/1/54 ” and adding that “ The interest of the United States or of this State in the foregoing property is not assessed or taxed ”. In so doing, they have disregarded the mandatory language of subdivision 17 of section 4 of the Tax Law, which provides that where taxable, the tax shall be “at the full value of such property ’ Eespondents ’ reasoning to the effect that ■ Grumman’s services in supervising the construction of the Government buildings which Grumman subsequently leased from the Government (valued by respondents at $2,350,000) constituted real property taxable to Grumman, is unconvincing. There is no proof that such expenditures by Grumman gave it any right of ownership in the buildings, the construction of which they supervised. More reasonable is the assumption that such expenditures by Grumman were in the nature of additional rent, since nowhere is it provided that such amounts are to be reimbursed on termination or applied on the purchase price if, as and when Grumman has an opportunity to exercise its right of refusal.
The assessment and tax are, therefore, even if considered as authorized by subdivision 17 of section 4, either illegal because not made in conformity with the dictates of that section with respect to valuation, or, if considered as made at the full value of the property, void for lack of consent by the United States.
In dealing with the applicability of tax statutes, it is a basic rule not “ to extend their provisions, by implication, beyond the clear import of the language used ” (American Locker Co. v. City of New York, 308 N. Y. 264, 269). In case of doubt, they are to be construed more strongly against the Government and in favor of the citizen (Gould v. Gould, 245 U. S. 151, 153; Matter of Good Humor Corp. v. McGoldrick, 289 N. Y. 452).
Finally, by way of summary, Grumman is not seeking an exemption from taxation. The property is not taxable by virtue of the overriding immunity of the United States Government as owner. It is the local government which is attempting to levy a tax where the property is already immune from taxation under a statute that has no application to the present situation. We are not dealing with an executory agreement whereby upon a certain payment or payments the legal title may be acquired. This agreement imposes a variety of other conditions besides “ certain payment or payments.”
*511 Since we deem the assessment illegal ab initio, it is unnecessary to consider the question whether the petition by Grumman for review of the assessment should have been remanded for further proceedings.
The order of the Appellate Division should be reversed and that of the Supreme Court, Suffolk County, ordering the assessment stricken, affirmed, with costs in all courts.

. “ Upon ninety (90) days written notiee to the Lessee that the Secretary has determined that the Facilities, or the major portion thereof, are excess to the further needs and responsibilities of the Department; provided, however, that if, within such ninety (90) day period, the Lessee shall notify the Department of its intention to exercise the right to purchase the Facilities as provided in Article X hereof, termination of this lease pursuant to this paragraph (d) shall not become effective unless and until the Department shall have obtained all necessary authorizations and approvals required to effectuate such sale to the Lessee and shall have notified Lessee that it has obtained such necessary authorizations and approvals.”

. “ (a) In the event that the Facilities are determined to be excess to the further needs and responsibilities of the Department, and the Department elects to terminate this lease in accordance with the provisions of paragraph (d) of Article VII hereof, the Lessee shall have an option, which may be exercised by notiee of intention to purchase delivered to the Department at any time during a period of ninety (90) days after receipt of notice of termination, to purchase the Facilities at their original cost to the Government less depreciation on improvements (exclusive of improvements financed by Lessee) at the rate of 3% per annum from the date of completion of the Facilities to the date notiee of Lessee’s intention to exercise such option is received by the Government. Sale of the facilities to the Lessee shall, however, be subject to the Department obtaining all necessary authorizations and approvals required to enable it to sell the Facilities to the Lessee.”

. Insofar as pertinent, subdivision 17 of section 4 of the Tax Law provides:
“17. Whenever the legal title of real property is in the United States or in this state, but the use, occupation or possession thereof is in a corporation, association, co-partnership or individual, or its or his successor in interest, under a contract of sale or other agreement whereby upon certain payment or payments the legal title is to be or may be acquired by such corporation, association, co-partnership or individual, his or its interest in such real property shall be assessed and taxed as real property subject to the provisions of this subdivision. The interest of the United States, or of this state, in such property shall not be assessed or taxed * * *. The interest in any such property of the corporation * * * shall be assessed and taxed in the same manner as if said corporation * * * held the legal title to such property, except for the addition to the description of the words ‘interest under contract,’ or other appropriate words descriptive of the interest in the property so assessed. Such assessment shall be at the full value of such property without deduction therefrom on account of the whole or any part of the purchase price, or other sum due on such property, remaining unpaid. The classification of such property or any part thereof as real property for the purposes of taxation under this chapter shall not be affected by any provision of the contract or agreement under which the same is held.” (Emphasis supplied. This section was formerly § 24, as added by L. 1925, eh. 99, and was renum. 17 by L. 1933, eh. 470, eff. June 30, 1933. Former subd. 17 was repealed by L. 1933, ch. 470, § 9, and was derived from Tax Law of 1896, L. 1896, eh. 908, § 4.)

. “ § 522e. Lease of real or personal property; State or local taxation; renegotiation of leases.
“ The lessee’s interest, made or created pursuant to the provisions of sections 522a-522e and 522e of this title, shall be made subject to State or local taxation. Any lease of property authorized under the provisions of said sections shall contain a provision that if and to the extent that such property is made taxable by State and local governments by Act of Congress, in such event the terms of such lease shall be renegotiated.” (Aug. 5, 1947, ch. 493, § 6, 61 U. S. Stat. 775. Repealed by Act Aug. 10, 1956, eh. 1041, § 53, 70A U. S. Stat. 641, 677, see U. S. Code, tit. 10, Armed Forces, § 2667. Substantially re-enacted with changes appropriate to the various departments of the armed forces as U. S. Code, tit. 10, Armed Forces, § 2667.) Subdivision (e) thereof provides:
“ (e) The interest of a lessee of property leased under this section may be taxed by State or local governments. A lease under this section shall provide that, if and to the extent that the leased property is later made taxable by State or local governments under an act of Congress, the lease shall be renegotiated,”

. The method of evaluation apparently employed to reach the 1955-1956 amount of $743,100 is described in Exhibit B as follows:
“ 1. Loss by petitioner on acreage sold to the U. S. Govt..... 1,052.00
2. Cost of engineering survey made at petitioner’s expense prior to contract with U. S. Government for establishment of Facilities ................................. 5,060.00
3. 10% of the cost of constructing improvements on Government property at Government expense on the theory that petitioner contributed services worth 10% in supervising the several contracts involved ...................... 2,350,000.00
Total .............................................$2,356,112.00
With a deduction for property in another town, and ‘ equalizing ’ the assessment at 33%, the total assessed value for the Town of Riverhead is.................. $743,100.00”