**UNITED STATES of America,**
**Plaintiff,**

v.

**Joseph W. R. DALLY, Treasurer of Orange County, State of New York, Defendant.**

United States District Court
S. D. New York.
Sept. 8, 1958.

Arthur H. Christy, U. S. Atty. for Southern District of New York, New York City, William Stackpole, Asst. U. S. Atty., New York City, of counsel, for plaintiff.

Thomas R. Hadaway, Goshen, N. Y., for defendant.

DAWSON, District Judge.

This application for a preliminary injunction is brought by plaintiff, United States of America, against defendant Joseph W. R. Dally, County Treasurer of Orange County, New York, pursuant to Fed.R.Civ.P. rule 65, 28 U.S.C., to restrain said defendant from selling United States property for unpaid taxes. The action is one brought by the United States for a permanent injunction restraining the defendant from selling the aforesaid property and for a declaration that the taxes assessed against the property are null and void and to remove the property from the tax rolls.

This property is situate within Stewart Air Force Base, a military installation of the United States of America, in the township of New Windsor, County of Orange, State of New York. It consists of certain buildings and/or apartment units described in the notice of tax sale as follows:

"Parcel No. 293
Dayton Development Corp.
47 Bldgs., Wherry Housing Development,
284 Apts., N.E.S. & W. Stewart
Air Force Base, U. S. A. * * "

The pertinent facts are not in dispute. Pursuant to the authority of the Act of August 5, 1947 (5 U.S.C.A. § 626s–3)[1] and Title VIII of The National Housing Act, as amended (12 U.S.C.A. §§ 1748–1748h), the Secretary of the Air Force, representing the United States of Ameri-

1. New 10 U.S.C.A. § 2667'

ca (hereinafter called the Government) leased to the Dayton Development Corp., a New York corporation (hereinafter called Dayton), certain land at Stewart Air Force Base "for the purpose of erecting, maintaining and operating a housing project." Under the lease 284 apartments were to be constructed. As each building was completed title passed to the Government, although it remained under lease to Dayton. Title to the real property always remained in the Government. The construction was completed by March, 1955, and thereafter Dayton retained only a leasehold interest in the property. This leasehold interest of Dayton existed until October 29, 1957, when Dayton assigned its interest to the four brothers Zuckerman, and on or about October 30, 1957, they in turn assigned the lease back to the Government. Thus, after October 30, 1957, full title to the buildings and leasehold was held by the Government.

On January 1, 1957, the defendant, as Treasurer of Orange County, assessed State, County and town taxes for the year 1957 against Dayton. This assessment was levied against the buildings in the housing project, title to which had passed to the Government some twenty-one or more months prior thereto. Defendant apparently attributes his authority to tax these buildings to the decision of the United States Supreme Court in Offutt Housing Company v. County of Sarpy, 1955, 351 U.S. 253, 76 S.Ct. 814, 100 L.Ed. 1151, discussed infra.

The basic issue is the determination if either Dayton or the Government had, on January 1, 1957, an interest therein which could be taxed and subsequently sold by the County Treasurer of Orange County. If a taxable interest did exist the decision must be reached as to whether or not the impending sale of property would cause unusual hardship for the plaintiff.

As stated above, defendant relied upon the Offutt decision of the Supreme Court of the United States for its authority to tax the private interest of Dayton which was carved out of the Government's fee interest in this military installation. As

noted, at the time of this assessment Dayton had only a leasehold interest.

The Offutt case was in many ways analogous to the instant problem and likewise dealt with a Wherry Military Housing project and the difficult problem of state taxes levied upon property owned by the Federal Government. However, in Offutt the suit was brought against the county and its treasurer for a declaratory judgment that petitioner was not required to pay certain state and county "personal property" taxes. The Supreme Court upheld the authority of the Nebraska county to levy the personal property tax under Nebraska law upon the petitioner's leasehold interest.

In New York State, as in Nebraska, a leasehold interest is personal property. Grumman Aircraft Eng. Corp. v. Board of Assessors, 1957, 2 N.Y. 2d 500, 507, 161 N.Y.S.2d 393, 397, 141 N.E.2d 794. The interest of Dayton at the time of the assessment was, therefore, personal property, and there is no New York State tax on personal property. It was repealed by an amendment to Section 3 of the Tax Law in 1933 (L. 1933, ch. 470), McKinney's Consol.Laws, c. 60. Fort Hamilton Manor, Inc., v. Boyland, 1958, 4 N.Y.2d 192, 173 N.Y.S. 2d 560, 149 N.E.2d 856. Thus Dayton had no taxable interest on January 1, 1957. Further, the Government has never consented to the assessment of this tax against its property, and absent this consent property belonging to the United States may not be taxed. McCulloch v. State of Maryland, 1819, 4 Wheat. 316, 4 L.Ed. 579.

Defendant maintains that the insertion in the lease of the provision for ownership by the Government of the buildings upon completion was intended primarily to avoid payment of local taxes. This may have been a factor in the insertion of this clause, but the law does not prohibit businessmen from adopting lawful procedures to reduce their tax burdens.

Since there appears to be no taxable interest of Dayton on January 1, 1957, and since there was no govern-

ment consent to be taxed, it follows that there is no ground at this time for a sale of the property. The proposed sale and possible ensuing legal complications could interfere with the orderly operation of business at this military installation. A delay in the proposed sale pending determination of the principal action would cause no substantial difficulty to the defendant.

■■ The purpose of a preliminary injunction is to preserve the *status quo* and existing conditions in a controversy. Seagram-Distillers Corp. v. New Cut Rate Liquors, Inc., 221 F.2d 815, 820, certiorari denied 1955, 350 U.S. 828, 76 S.Ct. 59, 100 L.Ed. 740. In this matter the most effective way to maintain the *status quo* is to prevent the sale of government property until a determination of the applicable legal questions. Absent this restraint a cloud would be created on the Government's title to this property. Further, the estimate of ultimate success in the entire action is a prerequisite to the granting of a preliminary injunction. Bernstein v. Herren, D.C.1955, 136 F.Supp. 493.

Therefore, the relief requested should be granted, and an appropriate order will be entered herein in conformity with this decision. Submit proposed injunction order on notice to the adverse party.