OPINION OF THE COURT
Jones, J.
In this proceeding to review real estate tax assessments we determine that barge-mounted power plants, attached as these were to a pier in Gowanus Bay, Borough of Brooklyn, and operated by petitioner Consolidated Edison in connection with its Gowanus substation, together with auxiliary fuel supply barges, are structures "affixed” to land under section 102 (subd 12, par [b]) of the Real Property Tax Law and thus taxable as real property by respondent City of New York.
In describing the property we borrow liberally from the description in the opinion of Mr. Justice Carmine A. Ventiera at Special Term. The property which has been included in the assessment consists of: (1) four barges on which there are mounted gas turbine power plants designed to generate electric power; (2) accessory equipment mounted on the barges and used in connection with the power plants; (3) four fuel oil barges which supply fuel oil to the power plant barges, and (4) accessory equipment mounted on the fuel oil barges.
The barge-mounted power plants are moored at a pier owned by Consolidated Edison Company of New York adjacent to the Gowanus switching station and are connected with the *539 adjacent land-based facilities of Con Ed by means of cables and transmission lines. The barges are owned by Marine Midland-New York, as trustee, and are leased to Con Ed for a period of 25 years under a "bareboat charter party” dated May 20, 1971.
The property of Con Ed, as an integrated functioning whole, is known as the Con Ed Gowanus switching station. The station includes land, structures thereon and other property and equipment and the property which is the subject of the present proceeding.
Each barge is approximately 215 feet long, 79 feet wide and 12 feet deep with a superstructure rising at least 56 feet above the water line. Each barge houses eight gas turbine generators developing a total of 622,000 kilowatts, together with auxiliary equipment, associated apparatus and various connections with the shore. The electric power generated is transmitted by feeder cables suspended from take-off towers leading to similar towers on the pier and then to the substation. The station is linked to other stations and is part of the system through which electric power is supplied to different areas of the city as needed and forms a part of the grid (network of equipment for the distribution of electric power) linking Con Ed’s power generating facilities with adjacent utility companies.
Each barge is connected to the pier by a "spud and clamp” design system which allows for vertical movement with tidal variations and for linear movement with the wind, waves and the wash from passing vessels. Each has two clamps that fit two spuds (designed as an H-shaped beam and connected to the mooring by bolts) in such manner as to be capable of movement along the H-shaped beam. Con Ed’s claim is uncontroverted that all connections can be severed and the barge can put to sea, if desired, in 8 to 12 hours.
The four auxiliary fuel oil barges are owned by Con Ed. In size, capacity and function they are similar to barges in general use in New York Harbor. They measure 250 feet by 44 feet by 14 Vi feet deep and each has a capacity of 1,000,000 gallons. Their function is to store and supply fuel oil to the barge-mounted gas turbine generators, and they contain the requisite equipment to do so. These fuel oil barges are permanently tied up at the pier and are connected to the power plants. The fuel stored therein is supplied by other barges, not claimed to be subject to assessment for real estate tax purposes.
*540 In the assessments for the tax years here in question, 1972-1973 and 1973-1974, respondents assigned a total assessment to the Gowanus substation which included valuation of the property Con Ed asserts is personal property for which it seeks a reduction in assessment. Both courts below found that the barge-mounted power plants, the fuel supply barges and the necessary auxiliary equipment and apparatus were subject to taxation as "real property”, "property” or "land” under paragraphs (e) and (f) of subdivision 12 of the definitional section of the Real Property Tax Law (§ 102). Reliance was on the inclusion in those paragraphs of "Mains, pipes and tanks * ** * for conducting * * * heat, water, oil, electricity” (par [e]) and of "power generating apparatus * * * and equipment for the distribution of heat, light, power” (par [f]). In our view, however, because the property in question falls within the ambit of paragraph (b) of subdivision 12, it is unnecessary to determine whether it is also within the reach of the later paragraphs.[1]
We note at the outset, as Con Ed concedes, that the Legislature has the power to classify all property for purposes of taxation, provided only that the classifications do not impinge on the constitutional right to equal protection by the absence of any reasonable and rational basis therefor (Matter of Grumman Aircraft Eng. Corp. v Board of Assessors of Town of *541 Riverhead, 2 NY2d 500, 507; People ex rel. Farrington v Mensching, 187 NY 8, 16-17, 21-22). No claim of such impingement is made here; the question is simply whether the subject property is within the Legislature’s definition of real property for tax purposes. The resolution of the issue before us should not be predicated on the outcome of a logomachy as to the precise denotations of the words of the statute. Similarly our inquiry is not significantly advanced, much less concluded, by the references to precepts and canons of construction tendered by the parties; "As is often the case the classic canons of statutory construction hardly settle the controversy” (Becker v Huss Co., 43 NY2d 527, 540). The concepts and refinements which have been developed in the classifications of types of property at common law, while not determinative, are relevant for present purposes. (Cf. Matter of City of Lackawanna v State Bd. of Equalization & Assessment of State of N. Y., 16 NY2d 222, 226-227; Herkimer County Light & Power Co. v Johnson, 37 App Div 257, 263-264.)
Section 102 (subd 12, par [b]) contains the basic description of improvements which constitute real property for assessment purposes — "[b]uildings and other articles and structures, substructures and superstructures erected upon, under or above the land, or affixed thereto, including bridges and wharfs and piers”. In familiar concept most of such structures are erected along a vertical axis, rising in the airspace above the land or in consequence of excavation extending below the surface of the land. In this instance the improving structures are affixed, as are piers, along a horizontal axis. Whether improvement by structures of this type is to be included within the scope of paragraph (b) must turn to a large extent on the character of the particular structures and the degree to which they are affixed to the land. Surely power plants and fuel reservoirs of the type here considered fall within the familiar connotation of structures; no one would doubt that if erected on the land such facilities both in physical description and functional purpose would be within the easy reach of the real estate assessment rolls. At common law affixation turned on concepts of actual annexation to the realty, application to the use to which that portion of the associated realty is dedicated and the intention of the annexing party to make a permanent accession to the freehold. (Voorhees v McGinnis, 48 NY 278, 282; 23 NY Jur, Fixtures, § 2.) While, as we have noted, common law principles are not determinative, they are *542 instructive. Here the question must be resolved by reference to the degree of physical and functional connection to the land-based station, as well as by reference to the intention of the parties. The concept of functional connection as the predicate for real property assessment of component units was articulated in Herkimer County Light & Power Co. v Johnson (37 App Div 257, supra, there, to be sure, under the predecessor provision to present par [e]). It has not since been repudiated by our courts.
Determining the issue in the physical circumstances disclosed in this record, we conclude that Con Ed’s four barge-mounted power plants are properly to be classified as structures affixed to the land on which is situated the land-based distribution system to which these facilities are physically connected and integrally related. Although, as Con Ed stresses, the barge-mounted plants are not irremovably attached to the elements of the power system located on land, that separation is an undertaking of substantial dimension may be inferred from the fact that a period of 8 to 12 hours is required for the severance. It is apparent that the barges must be applied to the use to which the realty is dedicated, and that, when detached, the plants cannot perform operations for which they were designed or serve the purpose for which they were constructed — to generate electric power for distribution to Con Ed users supplementary to and augmenting the power produced by its land-based facilities; the accomplishment of that objective can result only from the functional integration and physical connection of the barge- and land-based units. The expenditure by Con Ed of more than 10 million dollars in modification of the existing pier and in installation of necessary lines, services and circuits to accommodate the barge-mounted plants is demonstrative of the power company’s intention that the junction of the water-based and land-based facilities be of at least semipermanent duration. Further evidence from which such an intention may be inferred is the fact that the mooring connection employed — the spud and clamp design system — is such that it permits adjustment by the barges on a regular and self-tending basis to both vertical and linear variations. Additionally, there has been installed in the water in close outboard vicinity to the barges a group of permanent pile clusters to serve as a protective shield for the mounted power plants against passing ship traffic. Although the argument is advanced that these barges would be usable *543 at other locations, there was no proof that they had ever been used at any other land-based station, or that they had ever been removed other than for purposes of repair for reannexation at the Gowanus switching station.
In short, Con Ed, after obtaining a 25-year charter of the vessels, in lieu of comparable land-based facilities, has installed on four barges the equipment and facilities that constitute power generating plants. The barges have been so located at a pier which extends from the realty on which its facilities at Gowanus Bay are situated that the barge-mounted plants have been physically and functionally integrated on at least a semipermanent basis with its distribution system on the land. Protection for the floating units has been installed in the adjacent waters and in the method of their connection to the pier. Taken together with the facilities located on the land, they constitute an interrelated whole electric power production and distribution system. The consequence is no different than as though Con Ed had chosen to attach the four plants to the land by vertical — rather than horizontal — annexation. Recognizing the ingenuity in engineering design which they represent, in modern parlance they are readily conceived, for real estate tax purposes, as being within the definition of structures within the contemplation of paragraph (b).[2]
Concluding that the barge-mounted power plants are real property within the meaning of section 102 (subd 12, par [b]) of the Real Property Tax Law, we find no sufficient reason to reach a contrary result with respect to the auxiliary apparatus and equipment and the four fuel oil barges which, in the manner of operation here employed, were used in connection with the power plants (Herkimer County Light & Power Co. v Johnson, 37 App Div 257, 264, supra).
For the reasons stated, the order of the Appellate Division should be affirmed, with costs.
*544 Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.

. The paragraphs referred to appear in subdivision 12 of section 102 of the Real Property Tax Law in full as follows:
"12. 'Real property’, 'property’ or 'land’ mean and include:
* * *
"(b) Buildings and other articles and structures, substructures and superstructures erected upon, under or above the land, or affixed thereto, including bridges and wharves and piers and the value of the right to collect wharfage, cranage or dockage thereon, but shall not include bulk milk tanks or coolers installed upon a farm to hold milk awaiting shipment to market;
* * *
"(e) Mains, pipes and tanks permitted or authorized to be made, laid or placed in, upon, above or under any public or private street or place for conducting steam, heat, water, oil, electricity or any property, substance or product capable of transportation or conveyance therein or that is protected thereby;
"(f) Boilers, ventilating apparatus, elevators, plumbing, heating, lighting and power generating apparatus, shafting other than counter-shafting and equipment for the distribution of heat, light, power, gases and liquids, but shall not include movable machinery or equipment consisting of structures or erections to the operation of which machinery is essential, owned by a corporation taxable under article nine-a of the tax law, used for trade or manufacture and not essential for the support of the building, structure or superstructure, and removable without material injury thereto”.

. Petitioners’ argument that, inasmuch as the charter agreement between them with respect to the barges prohibited Con Ed from permitting the barges to become a part of, or subject to any liens on, any building or other real property, the barges may not be regarded as having been affixed to the land within the intention of the parties, is not persuasive. The attempt by the owner of the chartered vessels, Marine Midland, to preserve its interest in the barges from alienation or encumbrance by the charterer, is not binding on the taxing authority and could not of course serve to insulate from tax liability property otherwise subject to levy.