In the Matter of AMERICAN CABLEVISION OF ROCHESTER, INC., Respondent, v PAUL H. JACOBS, as Assessor of the City of Rochester, et al., Appellants.

Fourth Department, April 12, 1984

### APPEARANCES OF COUNSEL

*Louis N. Kash, Corporation Counsel* (*Susan L. Hauser* of counsel), for appellants.

*Mayberry, Kurlander, Burgess, Licht & Lunn* (*Kenneth D. Licht* and *Richard Mayberry* of counsel), for respondent.

### OPINION OF THE COURT

GREEN, J.

On this appeal, the issue is whether transmission and distribution cables, owned by respondent and situated on private property in the City of Rochester pursuant to easements, constitute taxable real property under subdivision 12 of section 102 of the Real Property Tax Law.[1] We

---

1. Real property is defined as follows:

"(d) Telephone and telegraph lines, wires, poles and appurtenances; supports and inclosures for electrical conductors and other appurtenances, upon, above and underground; provided, however, for purposes of this paragraph the term 'appurtenances' shall not include machinery and equipment used by a radio or television company in connection with furnishing radio or television programming provided such programming is ultimately furnished free of charge to the public.

"(e) Mains, pipes and tanks permitted or authorized to be made, laid or placed in, upon,

conclude, on the unanimous decision of the Court of Appeals in *Matter of Manhattan Cable TV Servs. v Freyberg* (49 NY2d 868), that since respondent's transmission and distribution cables are significantly different from telephone and telegraph equipment in both structure and function, they cannot be taxed as real property, as a matter of law.

Respondent is in the business of furnishing television programming to subscribers for a fee. A cable television system consists of a master antenna which receives various broadcast signals. These signals are then transmitted through coaxial cables (trunk lines) connected to respondent's central originating facility (the head end). The proposed signal is then transmitted through cables and various feeder and drop lines that branch off the cables, to the subscribers' television sets. Each subscriber pays an installation fee and thereafter, a monthly service charge.

In the *Manhattan Cable* case, the Court of Appeals held, as a matter of law, that the movable equipment[2] at either end of the system was not taxable under section 102 (subd 12, par [d]) of the Real Property Tax Law. They concluded: "We are satisfied from the record before us that there are significant differences, in both structure and function, between cable television equipment and telephone and telegraph equipment — the former, for example, allowing only one-way communication. These differences, as a matter of law, preclude taxation of petitioner's equipment upon the theory that it is 'telephone or telegraph' equipment within the meaning of the statute. (Cf. *New York State Cable Tel. Assn. v State Tax Comm.*, 59 AD2d 81, 83.)" (49 NY2d 868, 869, *supra.*) This holding was in sharp contrast to the finding by Special Term (90 Misc 2d 135), affirmed without opinion by the Appellate Division (68 AD2d 873), that "cables by which petitioner transmits its programming are similar in their characteristics to telephone and

above or under any public or private street or place for conducting steam, heat, water, oil, electricity or any property, substance or product capable of transportation or conveyance therein or that is protected thereby."

**2.** Although the Court of Appeals did not specify the equipment at issue there, the parties here agree that it included only the studio equipment on the company's premises at the head end and the drop lines and converters on the subscribers' premises at the receiving end.

telegraph lines" because they "run through the same subway ducts as the lines of local telegraph and telephone companies" (90 Misc 2d 135, 137).

In reversing, the Court of Appeals relied upon *New York State Cable Tel. Assn. v State Tax Comm.* (59 AD2d 81), where the issue was whether sales tax upon telephone and telegraph service (Tax Law, § 1105, subd [b]) was payable upon charges for cable television service. The Appellate Division, Third Department, held that it was not because: "In our view, the ordinary person reading the language in subdivision (b) of section 1105 referring to telephone and telegraph service would not ordinarily conclude that cable television service was intended to be included therein. While both telephony and telegraphy on the one hand, and cable television service on the other, involve dissemination by electronic means of communications as the latter term is used in its broadest sense, we do not believe it is commonly understood that the former includes the latter. In the construction of tax laws, a clearer manifestation of legislative intent should be required before the administrative agency can be allowed to encompass within one category of communication a different category of communication which to the mind of the ordinary individual would not be included therein." (*New York State Cable Tel. Assn. v State Tax Comm., supra,* p 83.)

The same reasoning applies with equal force here. Any tax, whether on sales or real property, must be authorized by statute. The holdings of the Court of Appeals and the Third Department indicate that cable television is not embraced by statutory provisions dealing with telephone and telegraph companies. That is precisely the issue we are faced with here. Since cable equipment is not functionally analogous to telephone and telegraph equipment, it may not be taxed under a statute which applies only to telephone and telegraph equipment (*Matter of Manhattan Cable TV Servs. v Freyberg, supra; Matter of Crystal v City of Syracuse,* 47 AD2d 29 [opn by Simons, J.], affd 38 NY2d 883; *Matter of Ceracche Tel. Corp. v Public Serv. Comm.,* 49 Misc 2d 554).

The fact of the matter is that respondent's transmission cables are not *"[t]elephone and telegraph lines, wires, poles*

and appurtenances" and therefore are not taxable under paragraph (d), nor are they taxable under paragraph (e), which applies only to *utility* "[m]ains, pipes and tanks". Since the words "telephone" and "telegraph" are not defined in the statute, they must be given their ordinary meaning (see *Quotron Systems v Gallman,* 39 NY2d 428, 431). Any ambiguities in the statute must be resolved in favor of the respondent taxpayer and against the city (*American Locker Co. v City of New York,* 308 NY 264, 269; McKinney's Cons Laws of NY, Book 1, Statutes, § 313, subd c).

Moreover, since cable television is not a utility (*Matter of Manhattan Cable TV Servs. v Freyberg,* 49 NY2d 868, 870, *supra;* Executive Law, art 28), paragraph (e) does not apply. A tax law must be interpreted as it would be read by the ordinary person (*Matter of Holmes Elec. Protective Co. v McGoldrick,* 262 App Div 514, 518, affd 288 NY 635). The ordinary person reading the language of paragraphs (d) and (e) would not conclude that cable television equipment, whether movable or not, was intended to be included within the statute.

For this reason, recent attempts to tax various technological equipment as "[t]elephone and telegraph lines, wires, poles and appurtenances" have been unsuccessful (see *Matter of Quotron Systems v Irizarry,* 48 NY2d 795 [stock ticker tape quotation transmission over leased telegraph and telephone lines]; *Bunker Ramo Corp. v Tax Comm.,* 48 NY2d 798 [electronic data processing and digital computer service transmitted from a computer center via AT&T lines to terminal equipment in the subscriber's premises]; *Matter of Crossman Cadillac v Board of Assessors,* 44 NY2d 963, affg 60 AD2d 842 [privately owned telephone system installed in business premises including 26 phones, an apparatus cabinet and 10 trunk relays]; *Matter of Metropolitan Bank v Department of Assessment,* 44 NY2d 864, affg 57 AD2d 1055 [alarm system including surveillance cameras, and a teletype and telecopier machine leased from a phone company]; *Matter of Crystal v City of Syracuse, supra* [subscriber owned portable telephone receivers]).

The city mistakenly relies upon a 1977 amendment to section 102 (subd 12, par [d]) of the Real Property Tax Law which expressly excluded from the definition of taxable "appurtenances" only "equipment used by a radio or television company in connection with furnishing radio or television programming provided such programming is ultimately furnished free of charge to the public." The city argues that if the statutory category of telephone and telegraph property was so narrow as to include only property used specifically in a telephone or telegraph system, per se, there would have been no need for the Legislature to have added the amendment.

The amendment, however, was intended only to overrule an opinion of the New York City Corporation Counsel and later, of the State Board of Equalization and Assessment (4 Opns of Counsel of St Bd of Equal & Assess No. 74, p 138), that all appurtenances in an installation which were essential to the completion of the delivery signals on cables were real property for purposes of taxation. The Legislature's decision to lessen the tax burden of public broadcasters using telephone lines could easily have been extended to the pay cable television industry by inserting the appropriate language in 1977. The Legislature's failure to do so is an indication that cable television was outside the scope of the amendment. Moreover, the *Manhattan Cable* case (*supra*) was decided three years *after* the 1977 amendment and since the Court of Appeals did not refer to the amendment in its decision, it is a fair inference that the court did not deem it applicable to cable television equipment.

There may be no justification for a taxing policy which allows respondent to avoid assessment of its transmission cables simply because they pass through private rather than public property. However, under the rationale in *Manhattan Cable,* we conclude that respondent's transmission cables are neither telephone or telegraph lines, wires, poles nor appurtenant thereto (Real Property Tax Law, § 102, subd 12, par [d]) nor utility mains, pipes or tanks (Real Property Tax Law, § 102, subd 12, par [e]) and therefore, are not taxable as real property. We do so mindful that tax statutes must not be extended by implication beyond the clear import of the language used (*Matter*

*of Grumman Aircraft Eng. Corp. v Board of Assessors,* 2 NY2d 500, 510), that they must be construed most strongly against the government and in favor of the taxpayer (*American Locker Co. v City of New York, supra;* McKinney's Cons Laws of NY, Book 1, Statutes, § 313, subd c) and that they must be given a practical construction as an ordinary person reading them would understand (*Matter of New York Tel. Co. v Ferris,* 257 App Div 415, 416, affd 282 NY 667). If equipment such as that involved in this case should be assessable as real property, "the remedy is legislative rather than by strained or distortive judicial decisional analysis" (*Matter of Crossman Cadillac v Board of Assessors,* 44 NY2d 963, 965, *supra*). The judgment should be affirmed.

DILLON, P. J., CALLAHAN, DOERR and MOULE, JJ., concur.

Judgment unanimously affirmed, without costs.