Ellis J. Staley, Jr., J.
This is a proceeding under article 78 of the Civil Practice Act and section 760 of the Real Property Tax Law to review a determination of the State Board of Equalization and Assessment of the State of New York which established an equalization rate of 25 on September 1, I960 for the City of Lackawanna, New York, based upon the 1959 assessment roll.
In establishing this equalization rate the respondent appraised the steel plant of Bethlehem Steel Company located at the westerly side of Hamburg Turnpike in the City of Lackawanna, *60 New York. The assessed valuation of this plant constitutes approximately 60% of the total assessed valuation of the real property on the 1959 assessment roll of the City of Lackawanna, New York. The parties have stipulated that if the respondent’s appraisal of this plant is substantially in error, then the equalization rate is substantially in error.
The main question in this proceeding is whether the structures located at the steel plant of the Bethlehem Steel Company in the City of Lackawanna described by the parties as consisting of: the blast furnace group; the open hearth furnace group; the coke oven group; the soaking pit group; the by-products group; the electrical and steam property and the ore bridges and unloaders were properly included as real property in the appraisal of the plant made by the respondent.
The petitioner contends that these items of property were not properly included in the respondent’s appraisal as real property and that they are exempt from real property taxation under the provisions of section 102 (subd. 12, par. [f]) of the Beal Property Tax Law as enacted by chapter 959 of the Laws of 1958.
This section provides as follows: “ 12. ‘ Beal property ’, ‘ property ’ or ‘ land ’ mean and include; * * * (f) Boilers, ventilating apparatus, elevators, plumbing, heating, lighting and power generating apparatus, shafting other than counter-shafting and equipment for the distribution of heat, light, power, gases and liquids, but shall not include movable machinery or equipment consisting of structures or erections to the operation of which machinery is essential, owned by a corporation taxable under article nine-a of the tax law, used for trade or manufacture and not essential for the support of the building, structure or superstructure, and removable without material injury thereto ”.
The respondent’s answer admits that the items of property in dispute are owned by Bethlehem Steel Company, a corporation taxable under article 9-a of the Tax Law and that these items are used by said company in the manufacture of steel and steel products.
Section 102 (subd. 12, par. [f]) of the Beal Property Tax Law is derived from former section 3 of the Tax Law and is a restatement of that prior section without any substantive change intended. The Beal Property Tax Law expressly provides in subdivision 5 of section 1602 that the new section is 1 ‘ intended to effectuate a continuation and restatement, without change in substance or effect, of the provisions of such laws and the classification of any property as real property or personal property, as the case may be, shall not be broadened, increased, dis *61 continued, diminished, affected or impaired by reason of such re-enactment.” Therefore, the interpretation of the prior law relative to the classification of property as either real or personal is pertinent to the issues raised herein.
The petitioner contends that the blast furnace group, the open hearth furnace group, the coke oven group, the soaking pit furnace group, the by-products group, the electrical equipment and blowing engines and the ore bridges and Hulett unloaders are machines or equipment consisting of a structure or erection to the operation of which machinery is essential, that they are not essential for the support of any building and that they are all movable without material injury or change to any building.
Item 1. Blast furnace group (7 blast furnaces, assessment $53,000,000) — In considering the application of section 102 (subd. 12, par. [f]) to the blast furnace group to determine its character as real or personal property, it appears to be a structure which requires machinery in its operation and, since it is a structure separate and distinct in itself, it is not essential to the support of any building, and if dismantled and moved, would not cause injury to any other building although it could cause material injury to the structure itself.
The basic issue is whether or not a blast furnace can be construed to be a “ movable machine or equipment ’ ’ within the meaning of the statute.
The petitioner has presented evidence to prove that blast furnaces have been moved from one site to another and from time to time they are offered for sale on the open market for dismantling and moving. The question is whether the fact that such a structure is capable of being dismantled, moved and reassembled meets the requirement of movability with the result that such a blast furnace should be included in the tax exemption provided by section 102 (subd. 12, par. [f]) of the Beal Property Tax Law.
In my opinion the section contemplates the inclusion of that type of machinery and equipment which in its use is auxiliary to the carrying on of the trade and manufacture of the taxpayer and which was contemplated by the taxpayer as capable of being removed as a separate entity from another immovable structure for further use at some other trade or manufacturing site. Therefore, if the original installation of the structure itself was with the intent of permanent annexation to the real property and continuous use at such site indefinitely in the course of trade and manufacture of the taxpayer, the item does not fall within the phrase “ movable machinery or equipment ” as provided by the statute.
*62 Blast furnaces qre generally immovable by intent and destined to remain attached to the realty for use during their usable period of existence. They do not possess the essential element of movability which includes the intent of their owner to transfer them from place to place if and when the original site is sold or abandoned. :
The petitioner relies mainly on the following cases: People ex rel. Ruppert Realty Corp. v. Cantor (115 Misc. 519, affd. 204 App. Div. 863); Matter of Leonhard Michel Brewing Co. v. Cantor (119 Misc: 854); People ex rel. International Salt Co. v. Matthews (Referee’s report unreported but attached to petitioner’s brief); Matter of Tri-County Asphalt & Stone Co. v. Town of Kingsbury (17 Misc 2d 437).
In the Ruppert case (supra) ice-making machines attached to a four-story building used as a freezing house was held to be personal property for tax purposes, the court stating as follows at page 538: “ It appears from the evidence that the machinery, apparatus and equipment in the buildings in question were installed therein after the buildings had been completed; that such machinery, apparatus and equipment were brought into the buildings in question in separate parts, which parts were assembled on the floors of the buildings on which the same were located and could be dismantled and carried out of the buildings through the doors thereof in the same manner in which they were brought in; that the floors of said buildings consisted of concrete, and all of the machinery, apparatus and equipment was brought into the building and assembled and set upon these concrete floors, some of them being stabilized by means of bolts and some of them resting on said floors without any fastenings whatsoever. * * * I am therefore of the opinion that the relator has by a preponderance of the evidence overcome the presumption that the machinery and equipment in question could not be removed without material injury to the buildings, and I accordingly find that all such machinery and equipment, with the exception of the boilers, generators and main shafting, were removable without material injury to the buildings, structures or superstructures, and that the same were not essential for the support of the said buildings, structures or superstructures. ’ ’
In the Michel Brewing Co. case (supra) the court decided that vats and brew kettles and other machinery used in the manufacture of ice and beer and attached to the building in which they were housed, were items of personal property for tax purposes and stated as follows (pp. 857-859): “ Much evidence was introduced relating to the functions of the various articles *63 of machinery and equipment, and the manner of its affixation to the buildings, and its removability. I have carefully considered all of this evidence. A part of the machinery rests upon the floors of its own weight, a part is fastened to the floors or walls by screws, bolts or other simple contrivance, and a part rests upon heavy concrete foundations, constructed for the purpose, and to which it is securely fastened by more intricate and elaborate methods and contrivances. Without doubt, the larger portion of this machinery is easily removable through windows and doors, and a considerable portion thereof is so removable in parts after being dismantled. * * * Without further reference to the evidence, I conclude, excepting as hereinafter specified, that none of the machinery and equipment here involved is essential for the support of the buildings; that none is equipment consisting of structures or erections, and that all is removable without material injury to the buildings in which it is variously located.”
In the International Salt Co. case (supra) a large number of items were described and determined to be either real or personal property. One of the items held to be personalty was timber tanks which the Referee described as follows:
“ These Timber Tanks are, as the name implies, large vats, some round and some square. They rest on a foundation excavated out of the side hill above the plant. The round ones are stoves held together by hoops for tension members. The square ones have timbers on the outside for tension members. Both types are readily dissembled, can be shipped ‘ knocked down ’ and re-erected elsewhere. It is just a matter of releasing the tension members of the tanks, and they collapse. When the timbers are placed again in appropriate position, with tension members properly adjusted, they are ready for use once more.
“ They are movable, but do they fall within Class No. 14, in which the Statute places ‘ equipment consisting of structures or erections to the operation of which machinery is not essential. ’ ?
“ These timber tanks are distinctly part of the equipment used directly and entirely in the production of salt from brine. They are necessary salt making equipment for this salt making-plant, and, while they are, in a sense, structures and erections they do require the operation of machinery for them to function as part of the plant process. I think they do not come within Class No. 14, and have classified them as personalty.”
Another item held to be real property was item 51 grainer pans which the Referee described as follows:
“ The classification of the grainer pans presents a very close question. Therefore, it may be wise to give a brief description *64 of the pans and set forth the reasons for the treatment here given.
“ There are seven concrete pans. Each is 139 ft. long, about 13 to 15 ft. wide, side walls, vertical on the inside and about 12 inches thick at base, battering up on the outside to about 6 inches at top, side walls about 2 feet high. Weight of pans about 128 tons each. They occupy nearly the whole floor of the building, leaving about 8 or 10 feet of passage way at each end. The roof posts are reinforced concrete and are at panel points spaced 18 feet one way and 16 feet the other, leaving between 4 and 5 feet passage way between the pans. The pans rest on a sand cushion.
“ A long steel structure lies in the bottom of each pan fitted with rakes operated by an hydraulic ram in an alternating forward and backward motion, working the crystalized precipitated salt along the bottom of the pan toward the north end, where the salt works up over a sloping end and is discharged from the pan.
“ While the grainer pans have the characteristic of physical removability, I am not satisfied that they have the characteristics of machinery and equipment movability in the manufacturing sense. They are not such equipment as would be moved with the plant if it moved away from the locality. The injury to the pans is not the test of taxability (Michael v. Cantor, 119 Misc. 854, at page 858), but such destructive treatment as the moving would require would constitute much more than ‘ injury ’ to the pans. They lack that essential element of movability which includes their use again at some other place if desired. I am, therefore, treating the grainer pans as realty.”
In the Tri-County Asphalt é Stone Co. case (supra) the court reviewed an assessment of real property which included stone crushers, bins and screens, asphalt plant scales, one small crusher and two conveyors. Construing the provision of section 3 of the Tax Law relative’ to the character of the items as either real or personal property, the court holding that they are personal property, stated as follows (pp. 438-439): ‘ ‘ It is alleged petitioner is a domestic corporation; thus it is liable for the payment of a franchise tax,pursuant to article 9-A of the Tax Law. The property in question is used for the manufacture of road building material, and is within the definition of machinery and equipment used for manufacturing purposes. (People ex rel. Syracuse Improvement Co. v. Morgan, 59 App. Div. 302.) The machinery can bel removed by unbolting it from its piers and foundations withdnt material injury, and respondent admits it is essential to the! operation of all of the property in question. *65 Moreover, it nowhere appears that this equipment was affixed to the realty with the intention that it was to be permanent in nature. It is clear that this machinery and equipment included in the assessments for improvements is personal property and not assessable as real estate, and is exempt from local taxation under section 3 of the Tax Law.”
The holding in Tri-County Asphalt & Stone Co. was approved and followed in Matter of Martin v. Gwynn (18 A D 2d 851) in which case the Appellate Division, Third Department, held that a stone crusher and its component parts were items of personal property within the meaning of section 102 (subd. 12, par. [f]) of the Real Property Tax Law reaching the conclusion that such items were movable machinery and equipment.
In each of the above cases cited by the petitioner the evidence established that the items involved could be removed without great difficulty and material injury to the machinery or equipment itself. The removal of blast furnaces is an expensive, lengthy and difficult job and one of the elements of the furnace, the refractory, is completely destroyed.
In the case of People ex rel. Loose-Wiles Biscuit Co. v. Cantor (N. Y. L. J. Oct. 27,1925, p. 372, col. 5) the court held that brick ovens contained in a building were real property stating as follows: “ The rule that obtains generally, as I understand the law, is that machinery constituting a part of a plant and indispensable to its operation as such is commonly taxed with and as a part of the realty. How about these ovens? Were they not annexed to the realty when built? Were they not ‘ applied and appropriated to ’ the business there to be carried on, and certainly a permanent structure so far as the relator is concerned? The construction of these ovens would seem to me to indicate an intent to make them a part of the freehold. The broad query is, Were these ovens affixed to, or on, or were they essential to the beneficial use of the land? If so, it passed with the land. Nor do I feel that the method of annexation is not as important as relator would urge. The argument that the furnace may be removed and taken down £ brick by brick ’ seems to me lacking in convincing power as an illustration of its temporary or casual character. The same argument might be applied to the brick walls of a factory of that material. Unless the object is clearly, unequivocally and conclusively designated as exempt under the section of the Tax Law, above discussed, the inquiry then should be, Is it structurally so identified with the plant as a producing element thereof so as to be considered an integral part of the realty and consequently properly assessable for taxation purposes? ”
*66 The intent of Bethlehem Steel Company was to erect a permanent structure for use in the operation of producing steel as a continuing operation at one site without contemplation of removal of said structure and as such the blast furnaces are held to be real property within the meaning of section 102 (subd. 12, par. [f]) of the Real Property Tax Law.
Item 2. Open hearth furnace group (35 open hearth furnaces, assessment $29,000,000) — The open hearth furnaces are erected within a building so that they become the center and essential structure on the floor of the building. The dimensions of the furnaces are 25 feet in width and 90 feet in length. The hearth of the furnace is 15% feet wide and 49% feet long and is brick lined throughout. ¡ Four mixer buildings are included in the group and are used for the storage of hot iron.
The evidence established that petitioner’s expert had no knowledge of any open hearth installations ever having been dismantled, moved to a new location and reassembled but did testify that an installation could be moved to a certain extent. He further testified that although the binding for the furnace and regenerator e'ould be moved that it would be an expensive proposition and that the brickwork would be an expendable item and could not be moved.
For the same reasons that blast furnaces are held to be real property the open hearth furnace group is not “ movable equipment or machinery” within the meaning of the statute and is, therefore, real property.
Item 3. Coke , oven group (459 coke ovens, assessment $24,000,000) — The coke ovens are constructed in batteries of ovens as one separate structure and the appraisal herein relates to 7 such batteries. Each coke oven has an oven chamber 18 inches wide, 42 feet long and 12 feet high. The top and floor are ma e of brick and on each side there is a heating wall consisting jf from 4% to 5% inches of brick. Below the oven chamber is the regenerator chamber which is made out of refractory brick. j The petitioner’s expert testified that coke ovens could be moved in part to a new location, be dismantled and reassembled at a new site. He further testified that parts of the coke ovens, such as the coal bins and the refractory brick could not be re-used and that he had no knowledge of any coke ovens having been dismantled and reassembled at a new location. The petitioner did present in evidence an advertisement for the sale of cobje oven equipment.
For the same reasons that blast furnaces are held to be real property the coke oven group is not ‘ ‘ movable machinery or *67 equipment ” within the meaning of the statute and is, therefore, real property.
Item 4. Soaking pit furnace group (95 soaking pit furnaces, assessment $5,700,000) — At Bethlehem’s Lackawanna plant there were three blooming mills each containing blocks of soaking pit furnaces. The furnaces are constructed of steel buck stays and steel binding and are refractory lined. The furnaces are used to heat the steel ingots which have been poured from the open hearth furnaces to the proper rolling temperature. The ingots are lowered into the furnace for heating and then raised after the heat process is completed and placed on charging buggies which transport the ingots to the rolling mill. The furnaces are located as a separate structure within the mill building and can be removed without material damage to the mill building. Petitioner’s expert testified that a soaking pit furnace could be moved but it would be impractical to do so. He further testified that he had no knowledge of any soaking pit furnace having been moved from one site to another and reassembled there.
For the same reasons that blast furnaces are held to be real property the soaking pit furnace group is not ‘1 movable machinery or equipment ’ ’ within the meaning of the statute and is, therefore, real property.
Item 5. By-products group (assessment $2,000,000) — The by-products plant consists of a number of separate structures primarily large tanks, towers, steel piping and pumps connected together with a system of pipes through which gases from the coke furnaces and liquid are distributed and treated to produce clean coke oven gas for heating purposes and other by-products. The various structures are made of fabricated steel attached to concrete foundations ranging in height from 70 feet to 90 feet. The petitioner’s expert testified that none of the structures comprising the by-products plant had ever been removed from the plant as whole pieces but that some had been dismantled and scrapped.
For the same reasons that blast furnaces are held to be real property the by-products group is not ‘ ‘ movable machinery or equipment ” within the meaning of the statute and is, therefore, real property.
Item 6. Electrical and steam property (mill motor room and electrical equipment, assessment $2,959,000 and Engine House Equipment, assessment $1,747,900) — The respondent has appraised certain blast blowing engines and turbo blowers used to compress air for the blast furnaces as real property. The *68 engines and blowers are located in a building separate from the blast furnaces. The engines and blowers compress air taken from the atmosphere and the compressed air is then distributed to the various blast furnace stoves through pipes. The stoves are connected to the blast furnaces by a refractory lined pipe known as the hot blast line. The entire operation constitutes a gas distribution system for use at the blast furnace. Section 102 (subd. 12, par. [f]) provides that real property shall include “ equipment for the distribution of heat, light, power, gases and liquids ” with the result that the gas blowing engines and turbo blowers were properly appraised as real property.
Another item of machinery and equipment appraised by the respondent is certain electrical equipment used to generate electricity for the; operation of the steel rolling mills. These motors are generators converting alternating current electricity to direct current electricity and are used for the driving power in the mill that rolls steel.
The respondent contends that the operation of these motors and generators results in transforming mechanical energy to electrical energy and is, therefore, the generation of electricity. Section 102 (subd. 12, par. [f]) provides that real property shall include “ power generating apparatus * * * and equipment for the distribution of * * * power ”. The electrical equipment appraised as real property herein properly falls within the definition of real property as stated in the statute.
Item 7. Ore bridges and Hulett unloaders (assessment $1,129,000) — At Bethlehem’s Lackawanna plant four ore bridges are constructed out of fabricated steel with spans reaching from 230 feet to 300 feet and are used for distributing the ore material in the storage areas. The ore bridges are constructed out of piecemeal match-marked sections and are erected from the track or ground up piece by piece. The bridges are constructed outside of any other building and are supported at each end by vertical leg’s attached to concrete foundations. A bucket for transporting the ore material operates on a track along the bottom of the bridge span. The petitioner’s expert testified that ore bridges could be moved by dismantling them piecemeal to maintain sizes of material convenient for transportation and that they could be reriveted or rewelded at a new site. He further testified that an ore bridge at the Lackawanna plant had been dismantled and moved from one area to another where it was reassembled.
An ore bridge contains many of the characteristics of a stone crusher installation and the evidence presented would support *69 a finding that Bethlehem Steel Company’s intent and actual conduct was to use the ore bridges as movable equipment. As the court stated in Matter of Martin v. Gwynn (supra, p. 852) in holding that a stone crusher installation was personal property: “ The test is whether it is ‘ movable ’ machinery and equipment and the proof in the record clearly demonstrates that all of it is movable. Not being located in any building, it is not ‘ essential for the support ’ of ‘ the ’ building, but stands fastened to the open ground in a movable condition. The history of the statute of exemption shows clearly that the article 9-a franchise tax on certain corporations was intended by the Legislature to be a tax in lieu of personal property taxes on these corporations and therefore the special definitions of section 102 (subd. 12, par. [f]) of what is and what is not personal property should apply to removable equipment used in trade or manufacture.”
The ore bridges fall within the meaning of the statute as movable equipment and are, therefore, to be appraised as personal property.
The respondent has also included in its appraisal four Hulett unloaders which were in operation at Bethlehem’s Lackawanna plant. These unloaders were separate machines operated on tracks to move along the loading dock on its wheels and used for unloading ore ships that are moored at the dock. They are operated and driven by electrical motors by an operator who rides on the machine. The unloaders are 175 feet 'in length and 45 feet in width. Petitioner’s expert testified that there was no trouble in moving one of the machines and that a machine similar to the unloaders at the Lackawanna plant had been moved from Brie to Cleveland and assembled there. The Hulett unloaders are movable machines and are, therefore, to be appraised as personal property.
The court, therefore, determines that the appraisal establishing the 1960 State Equalization Bate for the City of Lackawanna, New York, properly included as real property the items of the blast furnace group, the open hearth group, the coke oven group, the soaking pit group, the by-products and the electrical and steam property.
It is further determined that the appraisal of the ore bridges and Hulett unloaders as real property was erroneous and that the value of such items should be excluded from the appraisal.
The respondent is directed to exclude the sum of $1,129,000 from its appraisal of the real property of the Bethlehem Steel Company located within the City of Lackawanna, New York, for the purpose of establishing the 1960 State Equalization Bate for *70 the City of Lackawanna, New York, which sum represents the appraisal of the ore bridges and Hulett unloaders and as to all other items the respondent’s appraisal is confirmed.
The 1960 State Equalization Bate'for the City of Lackawanna, New York, .should be reviewed by the respondent and recomputed accordingly.