In the Matter of the CITY OF LACKAWANNA, Appellant, *v.* STATE BOARD OF EQUALIZATION AND ASSESSMENT OF THE STATE OF NEW YORK, Respondent.

Third Department, June 9, 1964.

*Norman F. Walawender* and *Peter A. Vinolus* (*Robert M. Hitchcock* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General* (*Edward J. Grogan, Jr., Paxton Blair* and *George A. Radz* of counsel), for respondent.

REYNOLDS, J. This is an article 78 proceeding brought by the City of Lackawanna to review a determination of the State Board of Equalization and Assessment which established an equalization rate of 25 for the City of Lackawanna. The rate was based on the 1959 assessment. For the purpose of this proceeding the parties have stipulated that: (1) the equalization rate is the ratio of the total assessed valuation of the real property subject to taxation on the tax rolls of the city to the full value of such property as determined by the board; (2) the assessed valuation of the Bethlehem Steel Plant constitutes 60% of the total assessed valuation of the city; (3) if the board's appraisal of the plant property is substantially in error the equalization rate for the city is also in error; (4) the only issue before the court is whether, (a) the blast furnace group, (b) the open hearth furnace group, (c) the coke oven group, (d) the soaking pit group, (e) the by-products group, (f) the electrical and steam group and (g) the ore bridges and Hulett unloaders are real property as defined by subdivision 12 of section 102 of the Real Property Tax Law. Special Term ruled that all of the above items save the ore bridges and Hulett unloaders were real property and as such were properly included in the board's computations. The question in this appeal is the correctness of this partial affirmance and partial reversal of the board's appraisal as above stated. Paragraph (f) of subdivision 12 provides that "Real Property", "property" or "land" as used in the Real Property Tax Law includes: "Boilers, ventilating apparatus, elevators, plumbing, heating, lighting and power generating apparatus, shafting other than countershafting and equipment for the distribution of heat, light, power, gases and liquids, but shall not include movable machinery or equipment consisting of structures or erections to the operation of which machinery is essential, owned by a corporation taxable under article nine-a of the tax law, used for trade or manufacture and not essential for the support of the building, structure or superstructure, and removable without material injury thereto". There is no question that all of the property here involved meets the statutory requirements of being owned by a corporation subject to taxation under article 9-A of the Tax Law and of being used for trade and manufacture. Nor do we have any difficulty in finding that the blast furnace group, the

open hearth furnace group, the coke oven group and the soaking pit furnace group constituted real property within the meaning of the statute. (Report of Joint Legis. Comm. on Taxation, Conference with Experts, Mar. 14, 1919, p. 841.) The statutory test is not the intent of the owner as in the typical common-law fixtures problem but movability. And while there is some evidence that despite the enormity of the items involved, movement of some of these is physically possible, as from a theoretical standpoint any structure ever built might conceivably be moved, the record clearly indicates that in each instance such movement is economically unfeasible. We construe the test under paragraph (f) of subdivision 12 to encompass both economic as well as physical considerations (see *Leonhard Michel Brewing Co.* v. *Cantor,* 119 Misc. 854, 859; comment, 25 Albany L. Rev. 76, 86), and thus, here, where the economic considerations so negate movement as a matter of practicability, the property is properly held to be real property. Similarly we concur with the reversal by the court below of the Board of Equalization's holding that the ore bridges and Hulett unloaders fell within the purview of paragraph (f) of subdivision 12. The record amply supports the finding by the court below that this property was movable and was, therefore, personalty.

The by-products group and the electrical and steam group, however, present more difficult problems. The by-products group consists of a number of separate structures, primarily large tanks, towers, steel piping and pumps, connected together with a system of pipes through which gases from the coke furnaces and various liquids are distributed and treated. With respect to the tanks and towers we concur in the finding of the court below that they were real property within the meaning of the statute for the same reason previously advanced for the blast furnace group etc. In our opinion, however, the plumbing, pumps, etc., should not have been held to be real property. The record clearly indicates the movability of these items. Respondent, however, urges that these were properly included because they constituted " equipment for the distribution of heat, light, power, gases and liquids ". This, we believe, represents too broad a construction of the statutory language. In our opinion the Legislature by including within the statutory definition of real property " equipment for the distribution of heat, light, power, gases and liquids " meant to encompass only such facilities as would be common to all manufacturing structures, i.e., the usual plumbing, sewerage and heating facilities, and not those present exclusively because of the particular manufacturing process involved. To hold otherwise would work

undue hardship on manufacturers whose manufacturing processes required the utilization of such items as compared with those whose processes did not. By the same reasoning the electrical and steam group, which contains electrical equipment to transform A.C to DC current to supply the necessary power for the mill that rolls steel and facilities to distribute gas and steam used as an integral part of manufacturing process, do not constitute real property. Further we cannot agree with the court below that the transmutation of A.C current to D.C current involves the generation of power within the meaning of paragraph (f) of subdivision 12.

The order should be modified, on the law and the facts, so as to direct the State Board of Equalization and Assessment to revise and recompute its determination of the 1959 State equalization rate for the City of Lackawanna in conformance herewith, and, as so modified, affirmed, without costs.

GIBSON, P. J., TAYLOR, AULISI and HAMM, JJ., concur.

Order modified, on the law and the facts, so as to direct the State Board of Equalization and Assessment to revise and recompute its determination of the 1959 State equalization rate for the City of Lackawanna in conformance with the opinion herewith, and, as so modified, affirmed, without costs.