Carmine A. Ventiera, J.
The question presented is whether certain property is properly assessable by the City of New York as real property or is it personal property and, as such, not subject to real estate taxes.
The property in question consists of: (1) four barges on which there are mounted gas turbine power plants designed to generate electric power; (2) accessory equipment mounted on said barges used in connection with these power plants; (3) four fuel oil barges which supply fuel oil to the power plant barges; and (4) accessory equipment mounted on the fuel oil barges.
The barge-mounted power plants are moored at a pier owned by Consolidated Edison Company of New York (hereinafter referred to as Con Ed) adjacent to the station and are connected with land-based facilities by means of cables, transmission lines, etc. They are owned by Marine Midland Bank-New York (hereinafter referred to as Bank), as trustee, and are leased to Con Ed for a period of 25 years under a certain agreement, dated May 20, 1971. The Bank and Con Ed are the petitioners in this proceeding.
The property involved, as an integrated functioning whole, is known as the Con Ed Gowanus Switching Station located in Brooklyn. The station includes land, structures thereon and other property and equipment including the above-described property in question.
Each barge is approximately 215 feet long, 79 feet wide and 12 feet deep with a superstructure rising at least 56 feet above the water line. Each barge houses eight gas turbine generators developing a total of 622,000 kilowatts, together with auxiliary equipment, associated apparatus and various connections with the shore. The electric power generated is transmitted by feeder cables suspended from "take-off towers” leading to similar towers on the pier and then to the substation. The station is linked to other stations and is part of the system through which electric power is supplied to different areas of the city as needed and forms a part of the grid (network of equipment for the distribution of electric power) linking Con Ed’s power generating facilities with adjacent utility companies.
The barges are connected to the pier by means of a series of *1067 so-called "spud and clamp” fixtures, each of which essentially is a clamp on the barge which is designed to fit an H-shaped beam or spud on the pier. The clamp slides vertically along the beam in response to tidal variations and is self-tending. The barges are also connected by various auxiliary power and control wirings, gangways, telephone lines, feeder cables and associated equipment, supply pipes, etc. Con Ed’s claim is uncontroverted that all connections can be severed and the barge can put to sea, if desired, in 8 to 12 hours.
The four auxiliary fuel oil barges are owned by Con Ed. They are similar to barges in general use in New York Harbor in size, capacity and function. These barges measure 250 feet by 44 feet by 14 Vi feet deep and have a capacity of 1,000,000 gallons. Their function is to store and supply fuel oil to the barge-mounted gas turbine generators and they contain the requisite equipment to do so. These fuel oil barges are permanently tied up at the pier and are connected to the power plants. The fuel stored therein is supplied by other barges, not under consideration in this proceeding.
Con Ed has instituted two tax certiorari proceedings to review assessments made by the city for the tax years 1972-1973 and 1973-1974. The proceedings were consolidated by court order, dated November 30, 1973.
The city now moves for an order dismissing the petitions for failure to state a cause of action and directing judgment in its favor as a matter of law while Con Ed cross-moves for an order directing judgment as a matter of law in favor of petitioners.
Subject to this court’s determination of the novel question presented, the assessed valuations for the years in question are as follows:

Claimed

Tax Years Land Value Improvements Total Non-Assessable

1972/1973 $3,264,000 $62,548,000 $65,812,000 $43,644,900
1973/1974 $3,264,000 $65,379,100 $68,643,100 $43,243,000
The parties stipulated as to the amount "Claimed Non-Assessable”.
Con Ed points out in supporting papers and affidavits that the barges are navigable vessels under Federal jurisdiction, regulation and inspection; that the power barges were constructed in Virginia and towed to New York; that they are *1068 capable of being moved; and that since their installation, one, in fact, has been towed away from its mooring to a shipyard for maintenance and repairs.
Con Ed strenuously argues that: the property in question is not actually physically permanently annexed to real property; the barges are not specifically adapted to or for the use of the substation and that it was never intended that they become part of the realty. There is much reference to their portability and the relative ease with which their connections with the pier and the shore installation can be severed.
Con Ed further contends that: the barges and the substation are capable of functioning independently; the power barges are not a part of the substation which existed prior to the installation; the barges do not distribute power but merely generate electricity which is then distributed through the station; their activities are controlled from the barges themselves which contain dual output voltages; the fuel supply barges are equipped with internal steam heating facilities; it is claimed that the fact that the property was intentionally designed and constructed with dual voltage capacity and the ability to supply heavy or light oil demonstrates that the equipment is not specifically adapted for the particular substation and is indicative of an intent to use them elsewhere at some future time. Furthermore, Con Ed points to the fact that the charter prohibits the use of the barges in such a manner as to result in their becoming attached to or a part of the real property.
The city, in its supporting papers and affidavits, disputes the contention that the barges do not distribute power and contends that they are in part, at least, controlled by the shore installations and are an integral part of the Con Ed electrical supply system in the New York area and a part of the northeastern electrical grid. The city contends that as a result of the vast sums of money expended on the piers, the mooring facilities and the shore installations, to accommodate the barges and to introduce the power generated into this system, the power plant and oil supply barges and their accessory equipment have become specifically adapted to the shore installation and their removal and relocation would involve an economic waste of such substantial sums of money that an "economic attachment” has resulted. The city asserts that about 14 million dollars has been so expended while Con Ed claims the sum to be less.
*1069 Having set forth the salient facts and allegations appearing in the papers, affidavits and exhibits on the motion and cross motion, this court will now examine the legal argumentation. The city has assessed the property in question under the Real Property Tax Law. It contends that under the express language of section 102 defining real property, the property in question is taxable as "Mains, pipes * * * for conducting * * * electricity” (subd. 12, par. [e]) and as "power generating apparatus * * * and equipment for the distribution of heat, light, power” (subd. 12, par. [f]).
To use the term employed by the parties, the city argues that the property is taxable as real property "per se” as defined under the statute without regard to any historical or common-law concepts regarding what is or what is not real property. ("The definition of the terms 'real estate’ and 'personal estate’ as used in the Tax Law, must be defined by those laws” (Herkimer County Light and Power Co. v Johnson, 37 App Div 257, 264). The city relies on the established rule that the Legislature may properly define real property for tax purposes and has done so here. ("The Tax Law has set up a standard of its own which must govern the case.” Herkimer County, supra, p 264.)
On the other hand, Con Ed contends that the property is not taxable "per se”. It concedes that "although the legislature has the power to classify all power generating apparatus as real property * * * it has not done so.” Con Ed argues that when the present statute was enacted it was merely intended to be a codification of existing law and not intended to modify or expand it (Real Property Tax Law, § 1602, subd. 5; § 1608, subd. 1 [now § 2002, subd. 5; § 2008, subd. 1]).
Accordingly, under Con Ed’s approach, the historical tests which determine whether a fixture is real property (such as annexation, permanent attachment, specific adaptation and intent) must be applied. It argues that upon application of the traditional tests it is clear that the necessary elements are not present and that the subject property therefore cannot be taxed as real property. The city answers this argument by stating that while it rejects the contention that historical tests must be applied, if the subject property be deemed not taxable per se, it nevertheless is still taxable since the necessary elements are present. The statute, section 102 of the Real Property Tax Law, follows:
"102. Definitions.
*1070 "When used in this chapter, unless otherwise expressly stated or unless the context otherwise requires: * * *
"12. 'Real Property’, 'property’ or 'land’ mean and include: * * *
"(e) Mains, pipes and tanks permitted or authorized to be made, laid or placed in, upon, above or under any public or private street or place for conducting steam, heat, water, oil, electricity or any property, substance or product capable of transportation or conveyance therein or that is protected thereby;
"(f) Boilers, ventilating apparatus, elevators, plumbing, heating, lighting and power generating apparatus, shafting other than counter-shafting and equipment for the distribution of heat, light, power, gases and liquids, but shall not include movable machinery or equipment consisting of structures or erections to the operation of which machinery is essential, owned by a corporation taxable under article nine-a of the tax law, used for trade or manufacture and not essential for the support of the building, structúre or superstructure, and removable without material injury thereto”.
Preliminary to a consideration of the alternative theories presented by the parties is an analysis of the basic issue — is the subject property taxable under the foregoing statute as real property "per se” under a specific definition therein? Neither the city nor Con Ed has presented, nor has the court, through independent research found, existing authority clearly holding that a similar facility housing "power generating apparatus and equipment” is real property and taxable as such solely because it is equipment that generates power.
Certainly the statute appears to say that it is. While it is true that a taxing statute, by construction, may not be given a wider scope or application than the words of the statute justify (People ex rel. Seligman v Gilchrist, 215 App Div 166), it is equally true that it should not be construed so as to give it a narrower scope than the clear meaning of its words. In Seligman (supra) the court said that in the interpretation of statutes levying taxes, it is the rule not to extend their provisions, by implication, beyond the clear import of the language used or to enlarge their operations so as to embrace matters not specifically pointed out.
In Triborough Bridge and Tunnel Auth. v Crystal & Son (2 AD2d 37, 39, 40, affd 2 NY2d 961), it was held that:
*1071 "Where, as here, the wording of a statute is expressed in clear language and is not confusing or contradictory, it is the duty of the courts to enforce the law in accordance with the letter of the statute (Matter of De Peyster, 210 NY 216, 225; People ex rel. Onondaga County Sav. Bank v Butler, 147 NY 164). The statute is definite and unambiguous. * * *”
" 'A statute must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisaged all the problems and complications which might arise in the course of its administration.’ (Lawrence Constr. Corp. v State of New York, 293 NY 634, 639.)”
And it has been held that "strict construction does not permit the ignoring of explicit language.” (Williamsburgh Power Plant Corp. v City of New York, 255 App Div 214, 217, affd 280 NY 551.)
Despite the "clear import of the language” (Seligman, supra) which is "not confusing or contradictory” (Triborough Bridge, supra), Con Ed urges that the "explicit language” (Williamsburg Power, supra), of the definition should not contrary to the general rule, "be interpreted as the ordinary person reading it would interpret it” (Howitt v Street & Smith Pub, 276 NY 345, 351). It contends that the Legislature did not intend electric power generating apparatus and equipment for its distribution, in and of itself, to be included in the foregoing quoted section 102 of the Real Property Tax Law and in its definition of real property. On the contrary, it contends that the Legislature intended that such apparatus and equipment only be taxable if it does not fall within the generalized exclusion as "movable machinery and equipment” and that "since the enactment of the Tax Law * * * the Legislature * * * has never included in the definition [of real property] the phrase 'power generating apparatus’ ”.
A review of the legislative history of the statutes involved will be of assistance.
It is from subdivision 6 of section 2, and from section 3 of the Tax Law that the present subdivision 12 of section 102 was derived (Real Property Tax Law, § 102). Subdivision 6 of section 2 of the Tax Law (as amended L. 1916, ch. 323, § 1) had provided: "The terms * * * 'real property,’ * * * include^] * * * all buildings and other articles and structures * * * erected upon * * * or affixed to the same”. (The present section 102 [§ 102, subd. (b)] of the Real Property Tax Law *1072 only substitutes the word "thereto” for the phrase "to the same”.) Thus, machinery affixed to a building or structure within the State was taxable under section 3 of the Tax Law and was taxable as real property under subdivision 6 of section 2 of the Tax Law (People ex rel. New York Edison Co. v Wells, 135 App Div 644; Herkimer County Light and Power Co. v Johnson, 37 App Div 257, supra). However, subsequently section 219-1 of the Tax Law exempted certain such machinery from real estate taxation (People ex rel. General Chem. Co. v Cantor, 105 Misc. 62).
Historically, prior to the enactment of the Real Property Tax Law in 1958, subdivision 6 of section 2 of the Tax Law and its predecessor contained the phrase now found in section 102 (subd. 12, par. [e]) of the Real Property Tax Law (heretofore quoted): "Mains, pipes and tanks * * * for conducting * * * electricity”. (Emphasis supplied.) In the same definition clause it also included as real property the "value of franchises, rights, authority or permission to * * * operate * * * mains, pipes * * * with their appurtenances, for conducting * * * light, power, gas, oil, or other substance, or electricity (Emphasis supplied.) It is quite obvious that early in the history of the Tax Law various items of equipment and appurtenances for conducting electricity, power, gas and oil were clearly included in the definition of real property.
Subdivision 6 of section 2 of the Tax Law did not, however, contain the language now found in section 102 (subd. 12, par. [f]) of the Real Property Tax Law (heretofore quoted): "Boilers * * * power generating apparatus * * * and equipment for the distribution of * * * power”. The phrase "power generating apparatus” is found for the first time in former section 219-j of article 9-A of the New York State Tax Law (L. 1917, ch. 726). Article 9-A was added in 1917 and provided for a franchise tax on mercantile and manufacturing corporations. Section 219-j thereof provided that such corporations shall not be assessed on certain machinery and equipment affixed to a building and specifically stated "except boilers * * * power generating apparatus”. In 1918 a new section 219-1 was added entitled "Personal property defined”. The definition included in the same language the same machinery and equipment and the same exceptions for power generating apparatus formerly found in section 219-j.
At this point, historically, it is clear that under the Tax Law manufacturing and mercantile corporations (business *1073 corporations) were not subject to personal property tax on certain movable machinery and equipment. It is equally clear that this exemption did not apply to power generating apparatus.
Shortly after the enactment of article 9-A, a case of helpful illumination on the question presented was decided (People ex rel. General Chem. Co. v Cantor, 105 Misc 62 [1918], affd without opn 188 App Div 959 [1919], affd without opn 228 NY 506 [1920], supra). In General Chem. the court was required to determine the change made in the taxable status of machinery and equipment of manufacturing corporations by the enactment of section 219-j (L. 1917, ch. 726; L. 1918, ch. 271). The case involved a review of assessments made for real estate tax purposes on land with improvements and machinery and equipment including an item for "boilers * * * power generating apparatus”. The City of New York argued that (105 Misc 62, 64, supra): "said machinery and equipment were properly and legally assessable as real estate as defined by subdivision 6 of section 2, article I of the Tax Law, and * * * were not exempt from * * * taxation * * * under the provisions of said section 219-j of the Tax Law.” The court stated that article 9-A substituted an income tax on such corporations and that thereafter they would not be subject to taxation on their personal property which the act defines. Upon reviewing the provisions of section 219-j and subdivision 6 of section 2 of the Tax Law, the court held (pp. 65-66): "under * * * said [section 6, subdivision 2] machinery installed in a building and affixed to the realty is taxable as real estate. People ex rel. New York Edison Co. v Wells, 135 App Div 644, and cases there cited. But the situation in this respect is now changed.” Thus, the court stated that prior to the amendment the machinery and equipment (including the power generating apparatus) would have been taxable as real estate but under the new statute, it found that the "plain intent” of the Legislature in defining "what shall constitute personal property” was to exempt from personal tax such machinery and equipment affixed to the building as could be removed therefrom without material injury thereto except, of course, boilers, etc. which were expressly precluded. Since it had been stipulated that the subject machinery and equipment were removable without injury, the court found them nonassessable. The items under the category of boilers and power generating apparatus were assessable for the purpose of real estate *1074 taxation. Insofar as this category was concerned it made no difference whether power generating apparatus was movable or not - such apparatus was taxable as real estate.
As heretofore stated, Con Ed concedes that "the Legislature has the power to classify all power generating apparatus as real property” but contends that the subject barges have not, despite the language of section 102 of the Real Property Tax Law, been so classified. It is argued that the historic legal tests must be applied at bar to determine whether the subject property is real property. To support its viewpoint Con Ed cites inter alia, the following cases: Potter v Cromwell (40 NY 287); Voorhees v McGuinnis (48 NY 278); and New York Edison Co. v Wells (135 App Div 644, supra).
Potter v Cromwell (supra) involved the rights of a purchaser of real estate at a sheriff’s sale. The real estate was improved with buildings and machinery. The question presented was whether the machinery was so affixed as to become a portion of the realty sold as to pass with the deed. If not so affixed the machinery or its value was available to the judgment creditor involved. This court notes that in Potter there was no question of taxability involved and, furthermore, the court therein indicated that things which may be fixtures between certain parties are not necessarily such between different parties who sustain a different relationship (id., p. 297).
Voorhees v McGuinnis (supra) involved an action to recover possession of machinery alleged to have been wrongfully removed from certain buildings by defendants. The question presented was whether the machinery formed a part of the realty. Voorhees concerned the rights of a purchaser of the realty at a foreclosure sale as against the holder of a chattel mortgage on the machinery. Again, no question of assessment for taxation purposes was under consideration. It should be noted that the court therein stated that whether "machinery may or may not be removed without great injury to building or to itself, is not now deemed to be controlling” (id., p. 282).
This court points out that both of these cases relied on by Con Ed set forth general rules applicable to the situations there under consideration and are of no assistance at bar.
In this court’s view one of the most illuminative cases on the question presented is Herkimer County Light and Power Co. v Johnson (37 App Div 257, supra). In that case the plaintiff was the owner and occupant of certain property used in its business of manufacturing and distributing gas and *1075 electricity for power and lighting. It was conceded that the items were " 'trade fixtures,’ and can be removed from the building wherein used without injury to the buildings or to the real estate whereon they are used” (id., p 262). The city assessed some of this property as real estate but plaintiff protested it was personal property. A portion of this property consisted of boilers, pipes, mains, steam engines with condensers, shafting, dynamos, a generator, wires, poles, etc. and constituted plaintiff’s electric light and power plant.
The court in Herkimer said that (pp. 262-263) "the exact question presented is, whether the properties described * * * are 'chattels’ or 'real estate’ within the Tax Law”. It found the term "trade fixtures” of no aid since it was a term usually employed in determining rights between a lessee and landlord. The court stated (p 264): "Neither would it aid the court to consider the cases holding what are or are not fixtures as between vendor and vendee, mortgagor and mortgagee, heir or devisee and personal representative, mortgagees and execution creditors, or between the owner of the fee and his judgment creditors, because the Tax Law has set up a standard of its own which must govern the case.” (Emphasis added.) It is significant that the court reached its determination without regard to the fact that the questioned property was movable without injury to the buildings or real estate and without regard to the "historic tests” urged by Con Ed. This court deems the following language most significant to the present fact situation (p 264): "Before the passage of chapter 293 of the Laws of 1881 (amending § 2, tit. 1, chap. 13, pt. 1, R.S.), the definition of the term 'real estate’ contained in the Revised Statutes was deemed applicable to the statutes relating to taxation, but by that act property theretofore assessable as personalty was declared to be assessable as realty. Under that and subsequent acts relating to taxation the definition of the terms 'real estate’ and 'personal estate,’ as used in the Tax Law, must be defined by those laws and not by the general statutes of the State. We are of the opinion that the language in the 3d subdivision of section 2 of the Tax Law above quoted, that 'all mains, pipes and tanks laid or placed in, upon, above or under any public or private street or place for conducting * * * electricity or any property, substance or product capable of transportation or conveyance therein or that is protected thereby,’ must be deemed applicable to machinery used in connection with the mains or wires for *1076 generating and sending forth electricity on the lines or gas through the mains. The property described in the contested items 3, 4 and 6 ['3’ included a boiler and an engine as well as mains and pipes, and other apparatus; '4’ included a removable iron gas holder standing in a pit; and '6’ included removable boilers, engines, dynamos, shafting, etc. connected with wires, poles and apparatus which altogether constituted the light and power plant] is designated for use in connection with these lines and mains, which are clearly designated as real estate by the Tax Law, and the property described in those items is assessable as realty in the tax district where it is situated.”
The Herkimer case, which has been consistently followed, clearly held that subdivision 3 of section 2 of the Tax Law (later Tax Law, § 2, subd. 6; now Real Property Tax Law, § 102, subd. 12, par. [e]) applied to apparatus used in the manufacture of gas and electricity and that it is taxable as real estate. It further held that the entire apparatus, including engines, used in generating electricity were assessable as realty notwithstanding the fact that some items were situate in buildings and removable without injury to the building and included an iron gas holder sunk in the ground but removable in sections without injury to the freehold.
Con Ed attempts to distinguish the Herkimer decision by contending that the statute interpreted therein required the apparatus to be "laid or placed in, upon, above or under ground” before said apparatus can be subject to real estate taxation and then only when "located in a building and affixed to the land”. This court cannot agree with such an interpretation of Herkimer since that decision does not require a specific finding that power generating apparatus be upon ground or in a building affixed to land. It must be remembered that an "iron gas holder” in a field was held taxable in that case and, furthermore, in Herkimer the apparatus was incidentally in buildings. In short, the rationale of that decision was that the machinery and power generating apparatus was used in connection with the generation and distribution of the electric power for the system.
Another case of some significance is Matter of New York Tel. Co. v Ferris (257 App Div 415, affd without opn 282 NY 667). In Ferris the disputed property consisted of central office equipment located in a building which was "so ingeniously devised and installed * * * it could be detached and removed *1077 without material injury to the realty” (p 417). [It also consisted of gas engines and electric generators.] The court clearly stated (p 417): "However, we do not propose to apply here the common-law rules which define fixtures * * * because * * * 'the Tax Law has set up a standard of its own which must govern the case.’ (Herkimer County L & P Co. v Johnson [supra])”. Since the court said that the assessment of the central office equipment as real property was authorized (p 419): "despite the fact that it can be detached and removed from the building without substantial injury to the realty” (emphasis added) it is clear that the court found the concept of movability under subdivision 12 of section 102 of the Real Property Tax Law to be totally irrelevant.
Another question presented in Ferris was whether outside telephone lines and poles were "appurtenances” and if so, were they taxable. The court found that (p 418): "outside wires and central office equipment are essential component parts which must function together as a unified, co-ordinated system” (emphasis added). The court concluded that (p 419): "in the statutory definition of real property as a subject of taxation (Tax Law, § 2, subd. 6 [now Real Property Tax Law, § 102, subd. 12, par. (d)], and § 3) the Legislature intended the word 'appurtenances’ * * * to include telephone lines, wires and poles and all accessory apparatus” installed in an office as an integral part of the essential equipment. Although the Ferris case differs on its facts and while it involves the interpretation of a different portion of the statute (Real Property Tax Law, § 102, subd. 12, par. [d]), the conclusions reached therein with respect to legislative intent, the significance of movability and the taxability of apparatus which consists of essential component parts integrated in and used in conjunction with a unified system are helpful to this court in arriving at its determination.
Another revealing case decided subsequent to the enactment of the Real Property Tax Law in 1958 which recodified existing statutes is Matter of City of Lackawanna v State Bd. of Equalization and Assessment (42 Misc 2d 58, mod. 21 AD2d 318, mod. 16 NY2d 222) wherein the court considered questions of taxability under section 102 (subd. 12, par. [f]) of the Real Property Tax Law. The main question presented was whether the property involved fell within the language of section 102 (subd. 12, par. [f]) of the Real Property Tax Law. Among the several categories of property considered was "the *1078 electrical and steam property” (p 60) consisting of blast blowing engines and turbo blowers through which compressed air was distributed to blast furnace stoves through pipes, all of which constituted a gas distribution system. Also considered was certain electrical equipment used to génerate electricity. The motors were generators converting current and used for driving power for a steel mill.
The court found the gas blowing engines and turbo blowers to be equipment for the (p 60) "distribution of heat, light, power, gases” etc. within paragraph (f). The court further found the electrical equipment (motors and generators) to be "power generating apparatus * * * and equipment for the distribution of * * * power” (p 60) and stated (p 68) "The electrical equipment appraised as real property * * * falls within the definition of real property as stated in the statute.” No mention was made of the exclusion contained in the paragraph for certain movable machinery.
While the Appellate Division (21 AD2d 318, supra) disagreed with Special Term’s ruling in Lackawanna the Court of Appeals flatly settled the issue and stated (16 NY2d 221, 231, supra): "On the record before us, the items as to which the courts below were in disagreement appear to fall within the taxable category of 'equipment for the distribution of heat, light, power, gases and liquids’ (Real Property Tax Law, § 102, subd. 12, par. [f]).”
This court notes that in reaching this conclusion under the recodified statute the court reached the same conclusion arrived at in Herkimer (37 App Div 257, supra), and Ferris (257 App Div 415, supra), regarding the taxability of equipment used in connection with the generation and distribution of electricity and power as part of a system.
The codification of 1958 did not change prior law. It was the Legislature’s intention to continue the exemption granted to business and mercantile corporations as to certain property used for trade and manufacture originally found in section 219-j of article 9-A of the Tax Law (see Lackawanna, 16 NY2d 222, 227, n. 2, supra) and to clarify that which always was and now still is specifically taxable as real property and that which was and is exempt. This was done in clear, concise, unambiguous language in subdivision 12 of section 102 of the Real Property Tax Law.
Having examined the statutes and the most relevant decisions available, this court concludes that the barge-mounted *1079 power plants and auxiliary barges at bar clearly have been ingeniously designed to generate and distribute electric power to the public through Con Ed’s system and indeed are, unquestionably, an integral part of that system. "Apparatus” is defined as "a collection or set of materials, instruments, appliances, or machinery designed for a particular use” and/ or "any compound instrument or appliance designed for a specific mechanical or chemical action or operation.” (Webster’s Third New International Dictionary [1969].) Since a tax statute should be interpreted as the ordinary person reading it would interpret it (Howitt v Street & Smith Pub., 276 NY 345, supra), this court finds that the barges and equipment are power generating apparatus, and taken together, constitute equipment for the distribution of heat, light and power and include mains, pipes and tanks for conducting heat, water, oil, electricity as those phrases appearing in subdivision 12 of section 102 of the Real Property Tax Law are commonly used and would ordinarily be interpreted.
This court further finds that the auxiliary equipment, accessory apparatus and the various shore connections mounted on the power plant barges as well as the spud and clamp fixtures, take-off towers, feeder cables, power and control wirings, etc. are essential to the function of the power plant barges and that the fuel supply barges and their requisite equipment for supplying oil to the power barges are indispensable to their operation and that, taken as a whole, are a collection of instruments, appliances and machinery designed for a particular use and designed for a specific action or operation — an integrated system for the generation of and distribution of electric power throughout the city and the northeast grid— and as such have been properly classified as property assessable as real property under subdivision 12 of section 102 of the Real Property Tax Law. From the legislative history of the statutes and the decided cases it is clear to this court that it is and always has been the policy of this State and the intention of the Legislature that power-generating apparatus and machinery and equipment, whether movable or permanently affixed to realty, used in connection with the generation and distribution of power and an integral component part of a unified system — are taxable as real property per se under subdivision 12 of section 102 of the Real Property Tax Law because they generate and distribute power. This court finds that historic tests and common-law rules defining fixtures *1080 simply are not determinative of what is properly taxable as real property in this area.
In passing, it is noted that upon the oral argument herein this court was asked to consider a supplemental contention raised for the first time since it had not been covered in the pleadings. Briefly stated, petitioners claim that movable machinery and equipment owned by a corporation taxable under article 9-A of the Tax Law which is used for trade or manufacture are not included in the definition of real property under section 102 (subd. 12, par. [f]) of the Real Property Tax Law. Petitioners further claim that under subdivision 1 of section 208 of the Tax Law, Marine Midland Bank — New York, as trustee, may be considered a "corporation” liable for franchise taxes under the definition which includes "any business conducted by a trustee”. They further claim that the Bank, under the cases submitted, might not be taxable because of the nature of its "business”. The cases cited, Matter of City Bank Farmers Trust Co. v Graves (272 NY 1) and Matter of Burrell v Lynch (274 App Div 347) involved certiorari proceedings to review determinations of the State Tax Commission which had held the trust involved liable for franchise taxes under article 9-A of the Tax Law. The court has closely examined these cases and finds them of no relevance to the issues herein presented.
It is this court’s view that the determination of whether petitioner trustee is conducting a "business” within article 9-A is not germane and accordingly need not be passed upon. The court has clearly indicated that the basis of the decision herein is that the property involved is taxable by its very nature without regard to whether it is movable or not and without regard to whether it is used for trade or manufacture. Thus, whether the trust is liable for franchise taxes has no bearing upon this court’s determination.
A second supplemental contention, not in the pleadings, was also raised on the oral argument for the first time. The crux of this argument is that the Sales Tax Bureau, Department of Taxation and Finance, State of New York, has "recognized” the electric generators (the units themselves) to be personal property. The court has carefully considered the statements made upon the oral argument, the discussion in the briefs and affidavits, the nature of the sales tax paid, and the payment of sales taxes on rental payments and has concluded that, any determination by the Director of the Sales Tax Bureau regard *1081 ing the taxability of the subject property under the Sales Tax and Use Law is of no significance in this proceeding.
Accordingly, respondents’ motion to dismiss the petitions is granted and petitioners’ cross motion is denied.