OPINION OF THE COURT
Robert C. Meade, J.
In this proceeding instituted by the petitioner to review assessments on certain real property pursuant to article 7 of the Real Property Tax Law, petitioner seeks partial summary judgment that certain machinery and equipment are not assessable real property by virtue of the provisions of section 102 (subd 12, par [f]) of the Real Property Tax Law. Respondents cross-move for a converse declaration pursuant to section 102 (subd 12, pars [b], [f]) of the Real Property Tax Law.
The real property was the subject of a ground lease, dated October 24, 1963, between United States Steel and Carnegie Pension Fund, Inc., as landlord, and Waldbaum In Roosevelt Field, Inc., as tenant, for a term expiring May 31, 1996. On July 19, 1973 the tenant sublet the premises for a period of 30 *579 years to Sysco Corporation, of which Global Frozen Food (Global) is a division. The original improvement at the site was used by Waldbaum as a dry warehouse and as of July, 1973 assessed at $510,000. The structure, erected in 1964, was a one-story building with a total floor area of 308,000 square feet and a height of 24 feet. Following execution of the sublease Global converted the existing structure into a frozen food warehouse by construction of certain alterations and the installation of a frozen food storage area and freezing equipment. The assessed valuation placed upon the subject premises for tax years 1975-1976 and 1976-1977 was the sum of $1,044,050 and $1,153,515, respectively.
The assessment card maintained by the respondent board of assessors describes the contested equipment and machinery as follows:
"(a) Cold Storage Area — Const. 2,240 LF at $21.90 + 190,-000 sq. ft. at $180, and
"(b) Equipment — 3,990,000 cubic feet at .16 per cubic foot.”
Petitioner contends that both the cold storage area and the equipment are not subject to real property taxation in that they meet the requirements of the exclusionary provisions of section 102 (subd 12, par [f]) of the Real Property Tax Law reading as follows:
" 'Real property,’ 'property’ or 'land’ mean and include: * * *
"(f) Boilers, ventilating apparatus, elevators, plumbing, heating, lighting and power generating apparatus, shafting other than counter-shafting and equipment for the distribution of heat, light, power, gases and liquids, but shall not include movable machinery or equipment consisting of structures or erections to the operation of which machinery is essential, owned by a corporation taxable under article nine-a of the tax law, used for trade or manufacture and not essential for the support of the building, structure or superstructure, and removable without material injury thereto”.
The principal dispute between the parties is as to whether the freezing or cold storage area (consisting of floor, walls and ceiling) and the equipment are movable as contemplated by the above-quoted statutory provisions. Except for the existing floor in the original construction all other elements that combine to create the cold storage area, including insulated wall and ceiling panels, ductwork, piping and associated apparatus, were manufactured elsewhere and shipped to the site *580 where they were assembled and installed. Before actual installation the existing concrete floor was removed and a new insulated floor constructed at a cost of approximately $294,-000. Thereafter, the entire refrigeration system of machinery, equipment, piping, ductwork, instruments and associated apparatus essential to its operation was installed within the original building. In some respects the subject’s contested items constitute a building within a building and all are necessary to its use as a frozen food warehouse.
A somewhat understandable concept of the scope of petitioner’s facilities is gained by reviewing the following facts revealed in the moving papers:
(a) The freezer system produces a maximum of 1,000 tons of refrigeration at a constant temperature of — 10°F;
(b) The freezer machinery and equipment weigh in excess of 135 tons;
(c) The cold storage structure has a floor area of 190,000 sq. ft., a volume of 4,200,000 cu. ft. and a ceiling height of 22 ft.;
(d) The insulated wall and ceiling panels have a combined dead weight of 250 tons;
(e) some period of time in excess of one year was consumed in the installation of the complete freezer system;
(f) The cost of constructing the freezer area as testified by petitioner, Global, was $2,035,300, and the cost of the freezer equipment, consisting of compressors, motors, piping and ducts, was in the sum of $837,300, for a total of $2,872,600;
(g) The time necessary to remove all elements in dispute, except the floor which will remain, is estimated to be between four and six weeks;
(h) Respondents estimate that the replacement cost new, before depreciation, for the years 1975, 1976 and 1977 is the sum of $4,042,500, $4,332,000 and $4,668,000, respectively;
(i) To dismantle and relocate the system at a different site is estimated by petitioner to cost $1,200,000, which sum does not include construction of new insulated floor, transportation charges, or repairs to existing building. In contrast respondents’ engineer estimates relocation costs in May, 1975 at $3,389,500 and in May, 1976 and 1977 at costs of $3,632,000 and $3,914,000, respectively.
Since the motion papers of the parties did not resolve questions as to the permanent nature of the incorporation of the wall paneling nor the cost of disassembly and relocation, a *581 hearing was conducted pursuant to CPLR 3212 (subd [g]), in an effort to aid in disposition of the article 7 of the Real Property Tax Law proceeding.
Petitioner asserted that all wall panels installed at the site could be easily removed by excavation of one section of the concrete floor to remove one panel, which open area then permitted all remaining panels to slide into the open floor section from which they could then be removed. However, the evidence accepted by the court reveals that each panel is firmly fixed to a sill member, some 14 inches below the surface of the newly constructed floor, by nail or staple which not only prevents its being slid but further requires excavation of all concrete floor immediately fronting the paneling. The permanency of this type of construction militates against the "movable” nature of this equipment as contemplated by section 102 (subd 12, par [f]) of the Real Property Tax Law. Again this court concludes from the totality of the evidence that the relocation costs estimated by respondents’ engineering witness and as described above are more comprehensive and realistic than those submitted by petitioner. Both parties properly concede that economic considerations bear strongly upon the "movability” of machinery and equipment within the exempting language of section 102 (subd 12, par [f]). (See Matter of City of Lackawanna v State Bd. of Equalization & Assessment, 21 AD2d 318, 321.) In this test the evidence dictates a finding that the cost of disassembly and relocation of the system on any tax status date in issue would be economically impractical.
The court grants respondents’ cross motion and finds that both the disputed cold storage area and equipment described on the assessment cards of the respondent board of assessors are assessable.